### MAESTRI v. NALL. *
### No. 14342.

Court of Appeal of Louisiana. Orleans.
Jan. 3, 1933.

Jas. D. McGovern and Jose A. Morales, both of New Orleans, for appellant.

Guy J. D'Antonio, of New Orleans, for appellee.

JANVIER, J.

On May 5, 1932, Maestri filed this action, alleging that Nall, his tenant, had failed to pay the monthly rent note for $32.50 due on May 1, 1932, and that under the terms of the written lease this failure matured the remaining four notes covering the unexpired term of the lease. He prayed for judgment for $162.50, with interest and attorney's fees, and obtained a writ of provisional seizure under which the household effects of Nall contained in the leased premises were impounded.

Nall, the tenant, admits that at the time of the filing of the suit, the note, which, according to its tenor, was due on May 1, had not been paid, but he denies the landlord's right to proceed against him on May 5, contending that during the several months preceding May there had been established a custom under which the payment of rent had been delayed for from one to three days, and, asserting that a landlord who, month after month, without objection or protest, accepts rent a few days after the date of maturity of the rent notes, cannot, without previous notice, change the established custom and unexpectedly claim a forfeiture of the lease or the accelerated maturity of the otherwise unmatured notes.

Nall also declared that the failure of Maestri to obtain the rent due on May 1st resulted from no fault of his, but was caused by the neglect of the rent collector, Moran, to call at Nall's place of business to obtain it.

By reconventional demand Nall claims of Maestri $250, contending that the provisional seizure was premature and illegal and alleging that that sum is necessary to reimburse him for legal expenses and other costs to which he has been put and to assuage his injured sensibilities.

The court, a qua, dismissed the reconventional demand and rendered judgment for plaintiff, as prayed for, recognizing the lien and privilege upon the property seized and maintaining plaintiff's right to the writ of provisional seizure.

On a new trial which was granted the court below rendered another judgment in all respects identical with the first, except in the matter of interest; this being fixed in the second judgment at the legal rate instead of at 8 per cent., as in the former judgment. Nall has appealed.

If, with Maestri's consent and acquiescence, there had been established a custom of accepting the rent later than on its due date, then it is well settled that he could not, without prior notice, change that custom and attempt to enforce the rights which he may originally have had under the contract of lease, but which, by custom and consent, had been changed, for "parties to a contract may, by subsequent conduct in their mode of dealing with each other, under it, modify its terms or waive its conditions, expressly or tacitly." Bacas v. Mandot, 3 Orleans App. 324.

In a syllabus written by the court in Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann. Cas. 251, we find:

"Where, month after month, the lessor has been receiving payment of the rent a few days later, without objection, if he desires in the future to hold the lessee strictly to payment on the day the rent falls due, he must give him notice to that effect; otherwise, the lessee will not be in legal default from delaying the usual time."

To the same effect, see Brunning v. Grinage, 4 Orleans App. 429, and Roth v. Fabian, 7 Orleans App. 422.

On the other hand, however, it is equally true that, if the landlord accepts the rent money tardily tendered, not because he voluntarily agrees to the extension, but merely "because of an unwilling and a forced indulgence on his part," the doctrine that the written contract may be altered by custom is totally inapplicable. See Briede v. Babst, 131 La. 159, 59 So. 106, 107, in which the court said:

"It is perfectly evident from the evidence as a whole that plaintiff never expressly or otherwise waived his right to be paid his rent promptly; and that, if prompt payment was not exacted, it was because of an unwilling and forced indulgence on his part.

"To such a situation the doctrine of the case of Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926, 15 Ann. Cas. 251, is totally inapplicable. That doctrine can obtain only where the tenant is ready to pay the rent promptly and needs no indulgence, but delays in paying simply because he is under the impression, produced by the lessor's past conduct, that it is a matter of no

moment whether the payments be made promptly or a few days late."

See, also, Falco v. Gilbert, 2 La. App. 71.

■ Furthermore, even if it be shown that such a custom has been established, the delay of the tenant beyond the time at which payment has been made under the custom will re-create in the landlord the right which he originally had under the written lease. In other words, if it is customary to pay on the 3d, then delay until the 4th or 5th must be considered as sufficient to permit the landlord to take such legal steps as he may consider necessary to protect his rights, and courts are not permitted to exercise discretion and to undertake to determine whether the seizing landlord is acting harshly or has become unduly alarmed.

With these principles in mind let us examine the record.

It is conceded that during the preceding seven months the rent had on several occasions been paid a few days late. Defendant claims that on two occasions it had been paid on the 4th of the month and that no protest had been made; whereas, plaintiff asserts that, although defendant had at several times been a little late, at no time had the delay extended beyond the 3d of the month.

With particular reference to the rent note due May 1st, Moran, the collector, says that he called at the Nall residence on May 2d and found that no one was at home. It is admitted that he called again on May 3d and that on that day Mrs. Nall, who theretofore had always paid the rent at the residence, told him "that Mr. Nall was going to see Mr. Maestri that evening."

It is conceded that Mr. Nall did not see Mr. Maestri, though he (Nall) claims that he called at Maestri's home and was told that he was out.

Again, on May 4th, Moran, the collector, being advised by Maestri that Nall had not called as promised, went back to the Nall residence and spoke to Mrs. Nall, who told him to get in touch with Mr. Nall at his place of business.

Moran states that he called Nall on the telephone and he says that Nall told him (Transcript, p. 32): "If he (referring to Maestri) is in such a big dam hurry he can go to hell and do as he pleases."

Nall denies this, but admits that he held a conversation by telephone with Moran.

■ Whatever may be the truth about that conversation, it is evident that the rent was not paid when due, nor was it paid within the time which, even according to Nall himself, was customary, for, even after the usual delay, conceding that defendant's version as to what was the usual delay is correct, plaintiff's collector was unable to obtain the money and was being further put off.

■ As an apparent afterthought and as an additional defense, it is argued that at no time did Moran tender to either Mr. or Mrs. Nall the rent note. Had payment been tendered and had Moran then been unable to produce the note, Nall would have been justified in withholding payment until the production of the note; but such was not the case, and it is conceded that at no time was payment actually tendered. The record shows that on all prior occasions payment was made and then the note delivered to Mrs. Nall. She states (Transcript, p. 17): "When I paid him, he would give me the note."

■ It is also contended that when Mrs. Nall advised the collector to see Mr. Nall, he (the collector) should have done so and should not have called him by telephone. Prior to that time payment had been customarily made at the lessee's domicile. The collector was under no obligation to call at any other place, particularly since the telephone conversation, which he had with Nall, who was at his place of business, was not such as was calculated to lead him to believe that a personal visit there would produce results. Even if custom had not established lessee's domicile as the place at which the rent should be paid, that place, in the absence of stipulation to the contrary, was fixed by law, for in article 2157 of our Civil Code it is provided that, except where there is a place of payment "specified in the agreement," or where the payment is for a "certain and determinate substance, * * * the payment must be made at the dwelling of the debtor."

In two very recent cases our Supreme Court has considered this article of the Code. In Saxton v. Para Rubber Co. of La., 166 La. 308, 117 So. 235, 237, the court said:

"It is also the rule that, where the lease is silent as to where the rent shall be paid, the payment is to be made either at the lease premises or at the domicile of the debtor. * * *"

In the case before us the domicile of the lessor was the leased premises. In Edwards v. Standard Oil Co. of La., 175 La. ——, 144 So. 430, 431, the court referred with approval to Saxton v. Para Rubber Co., of La., and, again quoting the article of the Code, said:

"The law prescribes that 'payment must be made at the dwelling of the debtor.'"

Plaintiff was within his rights in taking the action that he did, and, therefore, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.

Affirmed.