177 So.2d 406 (1965)
MOSSY ENTERPRISES, INC.
v.
PIGGY-BAK CARTAGE CORPORATION and William S. Vincent.
No. 1873.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1965.
*407 Christovich & Kearney, W. K. Christovich, New Orleans, for plaintiff-appellee.
Henican, James & Cleveland, Emile J. Dreuil, Jr., New Orleans, for defendants-appellants.
Before McBRIDE, CHASEZ and HALL, JJ.
HALL, Judge.
Mossy Enterprises, Inc., as lessor under a written contract of lease, filed suit on August 13, 1963 seeking a solidary judgment against the lessee, Piggy-Bak Cartage Corporation and William S. Vincent, its president, who had bound himself personally as surety on the lease, for $13,131.08 covering past due rent and other items allegedly due under the terms of the lease. Judgment was rendered in plaintiff's favor for $6,902.61 together with attorney's fees fixed by the Court in the sum of $1,000.00. Defendants appealed. Plaintiff neither appealed nor answered the appeal being content with the judgment as rendered.
During all pertinent times plaintiff was engaged in the business of leasing motor vehicles and defendant corporation was engaged in the drayage business. On December 20, 1961 plaintiff and defendant corporation entered into a written contract hereinafter referred to as the "master *408 lease" which sets forth the general terms and conditions under which motor vehicles were to be leased from time to time by plaintiff to defendant corporation. As and when each vehicle was delivered by lessor to lessee and became subject to the master lease a separate "schedule" was prepared containing the lease details relative to that particular vehicle, such as its description, the date delivered, the term for which rented, the amount of monthly rental agreed upon for the particular vehicle etc. Each schedule also contained other lease data applicable to the vehicle described therein as hereinafter set forth. Nine vehicles were rented by plaintiff to defendant corporation and there were nine such separate schedules signed by the parties and identified with the master lease.
Under the provisions of the master lease lessee was obligated to pay the rental specified in each schedule monthly in advance on the first day of each month. The lease also obligated lessee to pay a penalty or "late charge" of 15% on any rental payment not made by the 15th of the month for which due; however the lease also provided that the "late charge" provision was not to be prejudicial to any of lessor's rights under the default provisions of the lease as contained in paragraph 11 thereof. Lessee was further obligated to return the leased equipment to lessor "upon the termination of this lease for any reason whatsoever."
Paragraph 11 of the master lease which relates to default thereunder provides that time is of the essence of the agreement and further provides that in the event lessee shall be in default in any payment due, or if any insurer cancels any policy of insurance provided for in the lease, lessor shall have the right to terminate the agreement and, at its option, may require lessee to surrender forthwith the leased equipment to lessor.
Paragraph 11 then goes on to provide for lessor's rights in the event of default. These rights may be separated into two categories which we will refer to as "Value Termination Adjustment" and "Rental Termination Adjustment," because the terminology in the lease is confusing.
Paragraph 11 also provides for the payment by lessee to lessor of reasonable attorney's fees in the event it should become necessary for lessor to institute proceedings to enforce any of the provisions of the lease.
In its original petition filed August 13, 1963 plaintiff alleged that defendant corporation was in default for non-payment of vehicle rental for July and August 1963 as well as for a past due rental balance and prayed (a) to recover a money judgment for all past due rental plus 15% delay penalties, for a Rental Termination Adjustment under the provisions of paragraph 11 of the master lease, and for reasonable attorney's fees, and (b) to be recognized as the owner of the vehicles entitled to their possession. Plaintiff reserved the right to make claims for any sum found to be due under the Value Termination Adjustment provisions of the master lease. In connection with its suit plaintiff obtained a writ of sequestration under which the leased vehicles were seized by the sheriff. They were subsequently bonded out by plaintiff and sold by it at private sale under the Value Termination Adjustment provisions of the lease.
Following the sale plaintiff calculated the Value Termination Adjustment due by lessee and amended its petition to claim this amount. Sometime later plaintiff filed a second amendment alleging an additional default by lessee by reason of the cancellation by the insurance company of the policies covering the leased vehicles.

OPINION

Rental dueDefault
Defendants' first contention is that plaintiff failed to sustain its burden of proving the lease was in default on August 13, 1963, the date suit was filed. They contend *409 that all rentals had been paid except the rent due August 1, 1963 and that plaintiff is estopped to claim a default because of its acquiescence in a long pattern of late payments.
Defendants show that a rental payment of $5,596.28 was made on May 7, 1963 and contend that this payment brought their account up to date through the month of May, that subsequent thereto they made two more payments of $1,300.00 each which paid all rental due through the month of July. Defendants' contention that the May 7th payment of $5,596.28 paid the rental due through the month of May is based on a letter written to them by plaintiff's counsel on May 20th in which he acknowledged receipt of the payment as making their account current. (The letter is not in the record). However, it is abundantly clear from the record that this payment covered the amount due only through the month of April, because the payment was made in response to a written demand by plaintiff's counsel on April 3rd in which he stated that a payment of $5,596.28 was necessary to bring the account "up to date". Counsel's letter of May 20th was a belated acknowledgment of receipt of the amount demanded on April 3 which defendants neglected to pay until May 7th and his statement that this payment made the account current was simply an inadvertent remark by plaintiff's counsel.
In his written "Reasons for Judgment" the Trial Judge found the facts as follows:
"The monthly rental specified under the schedule for all the equipment under lease was One Thousand Two Hundred Twenty-eight and 89/100 ($1,228.89) Dollars. Under the contract the monthly rental was to be paid on the first of the month, in advance. The Court finds that toward the rental for the months of May, June, July and August defendants made only two payments of One Thousand Three Hundred and No/100 ($1,300.00) Dollars each. The amount of past due rentals owed to plaintiff then is Two Thousand Three Hundred Fifteen and 56/100 ($2,315.56) Dollars. The Court does not find that plaintiff is entitled to the `late charges' specified in the contract."
These findings are completely supported by the record and we find no error therein, manifest or otherwise.
The record reveals no basis for defendants' contention that plaintiff acquiesced in a long pattern of late payments. On the contrary the record is replete with evidence that plaintiff demanded payment of rent and threatened litigation on those occasions when defendants did default in their payments. Where a lessor's acceptance of rent tardily tendered does not result from any acquiescence in the delays but merely "because of an unwilling and forced indulgence on his part" the doctrine that the written contract may be altered by custom is totally inapplicable. See Briede v. Babst, 131 La. 159, 59 So. 106; Maestri v. Nall, La.App., 145 So. 128; Rex Credit Co., Inc. v. Kirsch, La.App., 4 So.2d 797.
The lease provides for payment of rental monthly in advance on the first of each month. It further provides that time is of the essence of the agreement and that in the event lessee shall be in default in any payment due lessor shall have a right to terminate the agreement. We are in complete agreement with the following statement of the Trial Judge: "The Court is convinced that plaintiff has proved an active breach of this contract by the defendants and that Piggy-Bak was in default of its obligations under said contract."

Value Termination Adjustment
The provisions of the lease relative to the Value Termination Adjustment upon lessee's default are as follows:
"Upon any such termination due to default and upon the return of the *410 leased equipment, Lessor shall offer said equipment for sale for cash or, in its discretion, offer to credit Lessee as if such equipment had been sold for cash. If the amount realized from such credit is less than the assumed termination value of the equipment, determined by reducing the original value of the equipment through application of the monthly factors set out in the attached schedule, Lessee shall pay to Lessor the amount of such difference."
Each schedule fixed a predetermined amount called the "termination value" for the particular vehicle described therein. The amount of the Value Termination Adjustment with respect to the vehicle is the difference between its termination value as fixed in the schedule and the price brought by sale of the vehicle after termination of the lease. If the amount realized from its sale is less than its termination value the lease obligated lessee to pay lessor the amount of the difference.
Upon obtaining possession of the nine leased vehicles by bonding the sequestration plaintiff sold each of them separately at private sale. In two instances the sales prices exceed the termination value of the vehicles and defendant-lessee was given credit accordingly. In one instance the sales price equalled the termination value and no Value Termination Adjustment was due. In the other six cases the sales prices were less than the termination values of the vehicles, and resulted in a net amount of $2,948.52 due by lessee to lessor under the terms of the lease. This amount is included in the judgment rendered against defendants by the Trial Court. There is no dispute as to the correctness of the figures. Defendants, as hereinafter set forth, take the position that the Value Termination Adjustment provisions of the lease are unenforceable as a matter of law.

Rental Termination Adjustment
The provisions of the lease relative to the Rental Termination Adjustment are as follows:
"Lessee shall also pay to Lessor, as agreed liquidated damages, a Rental Termination Adjustment determined in accordance with the attached schedule entitled `Rental Termination Adjustment Due Lessor in Event of Premature Termination of Lease Due to Default'. On said schedule the adjustment shown for the first year of the lease is a flat amount payable without proration on account of elapsed time; after the first year of the lease the amount of the adjustment shall be determined by interpolating between the amounts stipulated on the schedule for the nearest dates on either side of the actual termination date."
Each schedule carried a column headed' "Rental Termination Adjustment Due Lessor In Event of Premature Termination of Lease Due to Default," and in this column was placed a specific figure for the adjustment due lessor with respect to the particular vehicle described in the schedule. Although the schedule copies retained by lessor contained the rental adjustment figures for each vehicle, the adjustment figures for only four of the nine vehicles appear on the copies delivered to defendant-lessee.
The Trial Judge allowed the rental adjustment for these four vehicles which totalled the sum of $1,638.53 but refused to allow any rental adjustment for the other five vehicles.
Defendants contend that no Rental Adjustment should be allowed even for the four vehicles because although the schedule copies furnished lessee specified Rental Adjustment figures for a default occurring *411 during the first year of the lease, there are no figures specified therein for a default occurring in subsequent years, and each of these four vehicles were in the second contract year at the time of suit. (The record shows that only three were in the second contract year.)
Defendants state that they are at a loss to understand how the Trial Judge arrived at the figure of $1,638.53 since there is nothing contained in the record from which it can be computed. The answer is contained in the terms of the lease which states that "* * * after the first year of the lease the amount of the adjustment shall be determined by interpolating between the amounts stipulated on the schedule for the nearest dates on either side of the actual termination date." The Trial Court arrived at the figure of $1,638.53 by a correct mathematical interpolation.

Enforcibility of the Contractual Stipulations
Defendants contend that plaintiff's claims for both the Value Termination Adjustment and the Rental Termination Adjustment are claims for liquidated damages being damages fixed in advance of default and contend that they are unenforcible under the jurisprudence because they bear no reasonable relation to the damage which could have been anticipated from breach of the contract, citing the bond for deed cases, Pruyn v. Gay, 159 La. 981, 106 So. 536; Cointment v. Segrest, La.App., 184 So. 360; Ekman v. Vallery, 185 La. 488, 169 So. 521 and others. Defendants also contend that both of these claims are in reality claims for future rent despite the fact that lessor had repossessed the property. They contend additionally that the claim for the Rental Termination Adjustment is a claim for damages for the nonpayment of money which under the codal provision (LSA-C.C. art. 1935) cannot exceed lawful interest.
We find no necessity for determining whether the amounts of the two claims are unreasonably disproportionate to the damage which could have been anticipated for the reasons that in our opinion: (a) the Value Termination Adjustment clause of the contract cannot be characterized as a penal clause or a provision for liquidated damages, and, (b) the Rental Termination Adjustment clause which is labelled "liquidated damages" in the master lease is in our opinion unenforcible for a different reason.
Although the Value Termination Adjustment provisions quoted supra are taken from paragraph 11 of the lease providing for lessor's remedies in case of default, paragraph 4 of the lease provides for a Value Termination Adjustment "at the end of the lease period." These provisions of paragraph 4 are in all practical effect the same as the Value Termination Adjustment after default. In other words, lessee bound itself to this adjustment even if the lease continued for its entire term without default. This being the case we are of the opinion that the Value Termination Adjustment cannot be characterized as a provision for liquidated damages. It constitutes in our opinion a part of the rental consideration for the lease. And obviously it is not future rent. Plaintiff is entitled to judgment for this item.
The Rental Termination Adjustment is "agreed liquidated damages" under the terms of the lease. The lease has for its object the payment of money rental and the liquidated damages are due for nonperformance of lessee's obligation to pay the rental timely. We are unable to see the Rental Termination Adjustment in any light other than "damages due for delay in the performance of an obligation to pay money."
Where the object of a contract is the payment of money, our civil code and jurisprudence have denied the right to compensatory damages.
*412 Civil Code Article 1934 (LSA-C.C. Art. 1934) reads in part as follows:
"Art. 1934. Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of loss he has sustained, and the profit of which he has been deprived, under the following exceptions and modifications: * * *
"(5) Where the parties, by their contract, have determined the sum that shall be paid for its breach, the creditor must recover that sum, but is not entitled to more * * *" (emphasis supplied).
But where the object of the contract is the payment of money the Civil Code provides in Article 1935 (LSA-C.C. 1935):
"Art. 1935. The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more." (Emphasis supplied.)
We repeat the oft quoted excerpt from the Court's opinion in Griffin v. His Creditors, 6 Rob. 216:
"There is, in our law, a marked difference between the damages which may be stipulated for the breach of an obligation to pay money, and an obligation to give a thing or perform an act. Where the object of a contract is anything but the payment of money, the parties may determine the sum that shall be paid as damages for its breach, and courts of justice will not interfere with such agreements; but, on the contrary will lend their aid to carry them into effect. Civil Code Art. 1928. But it is otherwise, when the contract is to pay a sum of money. The law has provided, that no damages exceeding ten per cent on the amount that was to be paid, can be stipulated. Article 1929 of the Civil Code declares: * * *." (Article 1929 quoted by the Court is now Article 1935 which we have quoted supra.)
See also Church Wardens v. Peytavin, 1 Mart (N.S.) 400; Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178; Dendinger, Inc. v. Emuy & Eichhorn, 12 La.App. 39, 124 So. 604.
Since the amount of the Rental Termination Adjustment far exceeds the amount of lawful interest plaintiff's claim therefor is unenforcible.
The attorney's fees allowed plaintiff by the Trial Court are entirely reasonable and the amount thereof is not contested.
For the foregoing reasons the judgment appealed from is amended by reducing the principal amount thereof from $6,902.61 to $5,264.08 and as so amended and in all other respects the judgment is affirmed, costs of this appeal to be borne by plaintiff-appellee.
Amended and affirmed.