BOUTALL, Judge.
This is a suit by a lessor for rental payments and other charges arising out of a lease of an automobile. Plaintiff leased defendant a vehicle under what is commonly referred to as an “open-end” lease, whereby lessee can continue the lease as long as desired, and each lease payment provides for a depreciation allowance per month which is totaled and used when the lease expires or terminates, in computing any balance due to lessee by lessor, or due to lessor by lessee. Said lease also provides that if the lease is terminated earlier than one year, the lessee, in addition to the other charges under the lease, must also pay lessor, for each month remaining in said one year, an amount equal to the difference between the fixed rent and the monthly depreciation allowance.
The trial court rendered judgment in favor of plaintiff-lessor and defendant-lessee appeals. Appellant urges two issues to us: (1) that the lease was obtained through fraud committed by lessor and an employee of lessee, and (2) that the lease contains provisions which are illegal and unenforceable under Louisiana law.
We shall first consider the issue of fraud in obtaining the lease.
At the time of making the lease one Walter Jordy was the manager of the New Orleans Branch of the defendant Alodex Corporation. Jordy had been the owner of a construction business which was purchased by defendant for expansion of its operations into this area. Jordy was retained as manager to operate the business. The sale encompassed the assumption of the obligations of the business, among which were several similar automobile leases, but not the lease in question. This lease, together with several others, was made several months later. The leased automobile had been purchased by Jordy from Bohn Ford, Inc., for the price of $2,961.00 (with sales tax, license, etc., the price was $3,104.05) and was a new 1969 Ford Fair-lane. Jordy later added air conditioning to the automobile at a cost of $276.15 and sold it to plaintiff, who, at the same time, June 10, 1969, leased it to defendant. The sale price was $2,800.00 and the agreed valuation of the vehicle in the lease was $3,067.00. Defendant alleges that these prices are much too high and that they represent, in effect, a bonus or pay-off to Jordy as an inducement to enter into this lease as well as others.
It must be noted at this time that the lease was not signed by Jordy, but by Ray L. Manley, a vice-president of Alodex. It is argued that Manley executed the lease relying on Jordy’s representations, however, there is no evidence to substantiate this, and neither Jordy nor Manley were called to testify. Similarly there is no showing of lack of knowledge on Manley’s part of Jordy’s prior ownership of the vehicle. Thus we are left to consider only the effect of the price and valuations above mentioned.
Jordy purchased the automobile from Bohn Ford, Inc., January 13, 1969, at a total cost of $3,104.05. He operated it until June 10, 1969, and added air conditioning at that time for $276.15. He thus had a cost of $3,380.20 when he sold for $2,800.00, a loss of $580.00. Considering that he used it for nearly 5 months, the transaction cost him $116.04 a month, remarkably close to the $116.50 monthly rental under the lease. We can see no fraud in these facts.
*290 Appellant argues, however, that the lease valuation of $3,067.00 was the price paid Jordy and that the vehicle was only worth $1,800.00 or thereabouts. The evidence shows this argument to be in error. The price was $2,800.00 to which was added a profit factor for lessor making the valuation of $3,067.00. While the various appraisers differed in their estimates of what the vehicle would be worth in June, 1969 (two had seen the vehicle in October, one had never seen it), a fair summation of their testimony shows the vehicle would be worth several hundred dollars more in June than when sold, and the price would vary according to mileage used and condition of the automobile. The standard price shown in the N.A.D.A. listing for such an automobile in average condition is $2,325.00. When the new air conditioning is added at a cost of $276.15 we have a price of $2,601.15. The testimony indicates that the car was slightly better than average.
The trial court found no fraud and we are of the opinion that the evidence substantiates this conclusion.
The next issue to be examined is the lease termination payment. Lessor assessed lessee with the following charges:
Deficiency due to depreciation $927.20
Due on accounts receivable 790.47
$1717.67
Minus Deposit made ~ 116.50
$1601.17
Lessor computed the deficiency due as follows:
Original valuation $3067.00
Minus 5 months reserve @ 81.29 406.45
Plus Administration fee 66.65 [1]
Minus Sale of Car 1800.00
$ 927.20
The accounts receivable amount was computed as follows:
Unpaid rent (5 months ■@ 116.50) $582.50
Penalty (Par. 2 of lease, 7 months) 207.97[2]
$790.47
Lessee contends that a deficiency charge at the termination of the lease is contrary to public policy and is merely a scheme to avoid the Deficiency Judgment Act, LSA-R.S. 13:4106 et seq., citing Clay-Dutton, Inc. v. Coleman, 219 So.2d 307 (La. App. 1st Cir., 1969). It is further argued that such a payment constitutes future rents which are not collectable when the property is repossessed. Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corp., 177 So.2d 406 (La.App. 4th Cir., 1965); Bill Garrett Leasing, Inc. v. General Lumber and Supply Co., Inc., 164 So.2d 364 (La.App. 1st Cir., 1964). This same argument is applied to the penalty provided relative to partial monthly rental payments for the balance of the first 12 months of the lease.
*291 The pertinent portions of the lease in question are as follows:
“2. Term; Return of Vehicle
This lease begins on the date when said vehicle is delivered to Lessee or Lessee’s representative and shall remain in effect until either (i) the date said vehicle is surrendered or recovered under paragraph 4 or (ii) the date Lessee makes final settlement regarding the vehicle under paragraph 14 whichever date shall first occur. Lessee shall give Lessor 30 days advance notice of the date when said vehicle will be surrendered for disposition under paragraph 4; provided however, that the date specified by Lessee shall not be less than one (1) year from the beginning of the term of this lease. Lessee shall return said vehicle on the date so specified to Lessor at Lessor’s place of 'business but in the event that such date is less than one year from the date the lease began then Lessee shall pay to Lessor for each month remaining in the first year of said term a sum equal to the difference between the specified fixed rental and the monthly depreciation reserve. Lessee further agrees that upon the expiration or termination of this lease for any reason, it will return to Lessor, at its said place of business, the said vehicle, in as good condition and repair as when received from Lessor, reasonable wear and tear and damage by fire or casualty in excess of the amount of the deductible insurance excepted.”
“e. When Lessee surrenders said vehicle to Lessor, at the expiration or termination of this lease, or otherwise, or upon Lessor obtaining possession of said vehicle after Lessee’s default, Lessor shall, as soon thereafter as practicable, obtain two (2) written offers to purchase said vehicle from wholesale automobile dealers. Lessor shall then notify Lessee of the amount of said offers by mailing such notice to Lessee at the address stated above, or such other address as Lessee may have notified Lessor in writing, or by any other method deemed by Lessor to give actual notice to Lessee. Within ten (10) days from date of said written notice, or within ten (10) days from the date of actual notice in the event said notice is not written, Lessee shall have the right to obtain for and on behalf of Lessor, an offer to purchase said vehicle. Unless Lessee obtains and submits to Lessor an offer to purchase so obtained by him, and said sale consummated within the ten (10) days indicated above, the highest offer to purchase received by Lessor from said wholesale dealer shall be binding as the appraised wholesale value. In the event Lessee obtains an offer to purchase said vehicle at a price which exceeds Lessor’s highest offer, then said offer by Lessee shall constitute the appraised wholesale value. If the appraised wholesale value exceeds the depreciated value of said vehicle, Lessor shall credit the excess to Lessee as a refund of a portion of the rental theretofor paid by Lessee; however, if the depreciated value of said vehicle exceeds the appraised wholesale value, then, in such event, Lessee shall forthwith pay Lessor an amount equal to the excess as additional rental.”
“17. Defaults:
If Lessee shall default in the payment of any installment of fixed rents, * * then, in any such event, Lessee shall be deemed to be in default hereunder, and Lessor, at its sole option, may thereupon terminate this lease without further notice to Lessee. Upon Lessor so terminating this lease, the vehicle and any rights of Lessee therein shall be forthwith surrendered to Lessor, and Lessor or its agents may take possession of said vehicle wherever same may be found,' and may enter upon any premises of Lessee to take possession of same. Lessor shall hold such repossessed vehicle free and clear of this lease and any rights of Lessee hereunder. Notwithstanding any provisions hereof to the contrary, the rent payment' period for such vehicle *292 surrendered or repossessed hereunder shall terminate on the last day of the calendar month in which such vehicle shall have been so surrendered or repossessed. Lessor shall retain all rents and additional sums paid by Lessee hereunder regarding said vehicle, as well as all refunds and other sums, if any, then in its possession, which, had this lease not been so terminated upon Lessee’s default, would otherwise be payable to the Lessee hereunder. In addition, Lessor shall be entitled to recover from Lessee all unpaid fixed rents for the period up to the termination of the rent payment period for said vehicle, together with all .additional rentals (including any sums due under paragraph 4 hereof), and other sums (including any repossession costs) payable by Lessee pursuant to any of the provisions of this lease, then owing and unpaid. Repossession by Lessor, as aforesaid, and any sale or sales made by Lessor of such vehicle, shall not in any manner affect the right of Lessor to recover from Lessee any and all damages which Lessor shall have sustained by reason of the breach by Lessee of any of the covenants, terms or conditions of this lease. The remedies herein provided in favor of Lessor upon default of Lessee shall not be deemed to be exclusive, but shall be cumulative and in addition to all other remedies in its favor existing in law, equity or bankruptcy.”
The record shows that lessee made no rental payments on the vehicle and that it was turned back to lessor in the middle part of September. The stated reason was that lessee felt the payments were too high for the little use obtained of the. car and its vehicle rental policy was being reconsidered. The parties could reach no termination agreement and lessee took the vehicle back because it had a prospective purchaser. Several weeks later, around the middle of October, the vehicle was returned to lessor and was sold on October 20, 1969. Although the rent was by then 5 months in arrears, this is not a case simply of default in rental payments, but rather of voluntary cancellation of the lease. In either event, the same settlement provisions of the lease apply.
The major thrust of lessee’s argument is directed toward the provision of Paragraph 4(e) of the lease wherein the depreciated value as computed in the lease is balanced against the highest purchase price of the vehicle offered, and, dependent upon the relative amounts of these two figures, an adjustment to the rent is made either in the nature of a charge for additional rent or a refund for rental already paid. In this case the result was a charge for additional rent of $927.20. Lessee contends that such a scheme, providing for sale of the leased thing and for assessment of additional charges when the sale price is insufficient to off-set the depreciation formula, is designed to circumvent the provisions of the Deficiency Judgment Act which provides for judicial process, appraisal and sale as a requisite of seeking additional recovery from a debtor. It relies upon the rationale pronounced in Clay-Dutton, Inc. v. Coleman, supra.
We do not agree with the application of the Deficiency Judgment Act to the situation before us. We believe our interpretation of the Act as decided in the case of Clay-Dutton, Inc. v. Plantation Nursing Home, 239 So.2d 442 (La.App. 4th Cir., 1970) is correct and we reaffirm our holding that the Act does not apply to the factual situation created herein. We note that the thing sold, the automobile, is the property of the creditor and not of the debtor. The plain language of LSA-R.S. 13 :4106 is concerned with the waiver of ap-praisement by a debtor of his property. The leased thing is not the property of a lessee but he only has a right of possession under the lease and then only until the lease is terminated.
We would agree that an attempt by a lessor to evict the lessee from possession and at the same time insist on payment of all future rentals that may become due under a lease is not permissible. Bill Gar *293 rett Leasing, Inc. v. General Lumber & Supply Co., Inc., supra.
However, such is not the case here. The payment herein called “additional rental” is not considered by us to be future rentals. We note that simply calling such payments by a particular name does not necessarily make it so. The substance of the payment must be inquired into to determine its operation and effect.
The evidence shows that the monthly rental is computed on a basis of the value of the vehicle on date of lease, to which a profit factor is added. Dependent upon the monthly payment lessee wishes to make and the probable use of the vehicle, the monthly rental is adjusted up or down, such that, hopefully, the vehicle’s estimated depreciated value will be the same as its actual depreciated value at the time of the termination of the lease. To accomplish this a “Monthly Depreciation Reserve” is computed at a higher or lower rate in accordance with the variables above mentioned. This figure, multiplied by the number of months the lease is in effect, is subtracted from the original value of the vehicle, to determine the estimated depreciated value. At termination of the lease, the vehicle is offered for sale and the highest price obtained is compared to the estimated depreciated value. A higher sale price results in refund to the lessee; a lower sale price results in a charge (additional rental) against the lessee.
It is apparent that this is not a future rental at all, but is based upon the monthly rental paid by lessee. If lessee wishes a low monthly rental, the probability is that he will have to pay additional rental at termination. If he accepts a higher monthly rental, he may obtain a refund. Thus the matter is one of negotiation of the monthly rental at time of confection of the lease and is a part of the consideration.
The provisions of this portion of the lease are essentially similar to those contained in leases previously before us for consideration in the cases of Clay-Dutton, Inc. v. Plantation Nursing Home, supra, and Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corp., supra. As we said in Clay-Dutton, Inc. v. Plantation Nursing Home, at 239 So.2d 448:
“ * * * Instead defendants-appellants are being required to pay an amount for which they agreed to be responsible at the inception of the lease upon the occurrence of a certain event, i. e. the termination or cancellation of the lease. They obligated themselves under the terms of the lease to pay the amount claimed by plaintiff-appellee in the event of termination or cancellation of the lease and such agreement forms part of the overall consideration of the contract. Therefore the payment of the sum sought herein is not payment of rent, but the performance of a contractual obligation freely accepted and agreed to by defendants-appellants, and is owed by them regardless of the reason for the termination or cancellation of the lease; it is the happening of that event alone in the manner in which it occurred which caused the claim of Clay-Dutton, Inc. to become due simply because the parties so provided in their contract. Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corp., La.App., 177 So.2d 406 (4th Cir. 1965).”
We now pass to a consideration of the sum called “penalty” by lessor’s president under the provisions of Paragraph 2 of the lease, quoted above. Since the vehicle was surrendered prior to the end of the first year of the lease, lessor seeks to collect a sum equal to the difference between the specified fixed rental and the monthly depreciation reserve for the 7 months remaining in the year. According to the testimony, this difference represents anticipated gross profits.
We held an essentially similar provision to this to be valid in Clay-Dutton, Inc. v. Plantation Nursing Home, supra, for the reasons quoted above. However, in the Mossy case, supra, we refused to permit re *294 covery of similar charges, holding that they constituted liquidated damages due for delay in the performance of an obligation to pay money and could not exceed lawful interest. LSA-C.C. art. 1935.
We note that the lease agreement in Mossy provided for these payments only if there was a premature termination of lease due to default in rental payments. In the Plantation case, supra, as in the instant case, such payments are provided simply for premature termination of lease for any reason by lessee before a specific term has elapsed and proportionate to the term. The object of the contract between the parties is not simply the payment of money but the lease of a vehicle with the attendant obligations on each party to perform in accordance with the contract. The measure of damages properly falls within the provisions of LSA-C.C. art. 1934(5) and we again refer to the quoted language of the Plantation case, supra.
Having concluded that the charges made are valid in principle, we now pass to a consideration of the actual amount determined.
As we have noted above there is an error in computation of the $927.20 deficiency charge due to applying the administrative charge of 2%% to the original valuation minus reserve rather than to the gross sales price. Instead of $66.65 the proper charge is $45.00 and the $927.20 should be reduced to $905.55.
Further, we are of the opinion that plaintiff should be restricted to the amount for which he prayed as cancellation charges, that is, $207.97. No evidence in the record supports a charge for $5.50 monthly tax on the computed differential charge. This $207.97, added to the unpaid rent of $582.50, results in total accounts receivable of $790.47. This, added to the deficiency of $905.55, amounts to total charges of $1,696.02, subject to a credit of $116.50 paid, or a total judgment of $1,579.-52.
We are of the opinion that the judgment rendered should be amended to read “in the full sum of One Thousand Five Hundred Seventy-Nine and 52/100 ($1,579.52) Dollars” instead of “One Thousand Six Hundred Thirty-Nine and 67/100 ($1,639.-67) Dollars”, and, as amended, is affirmed in all other respects at appellant’s cost.
Amended and affirmed.

. We note an error in computation of the administration fee. As above stated it amounts to 2y2% of the original valuation minus reserve, but should be based on sale price of car, that is, $45.00. We refer to Paragraph 4(f) of the lease:
“In addition to the foregoing, Lessee agrees to pay Lessor an administrative charge of 2.5% of the gross price for which said vehicle is sold, or $25.00, whichever sum be the greater, such charge to be due and payable as additional rental when final settlement is made with respect to said vehicle pursuant to paragraph 4e, above or paragraph 14 below. Lessor agrees to waive such charge if Lessee should lease another vehicle from Lessor at the time of such final settlement.”

. This figure is based on fixed rent of $111.00 minus depreciation reserve of $81.-29, or $29.71 per month, and is in accordance with the pleadings. A later figure of $35.21 per month was submitted, the difference being addition of $5.50 tax to the $111.00 making the rental figure of $116.50. Judgment was rendered using the latter computation.