McBRIDE, Judge.
Boulevard Investment Corporation, which in the year 1950 acquired the property known as 3239 Gentilly Boulevard, New Orleans, seeks to rescind a certain written lease covering said property which had been entered into in 1944 between Walter C. McGee, the then owner, and the defendant, Gardner C. Boulmay.
*918 The said lease was for an initial- period of 120 months commencing on the first day of January, 1945, and ending on the thirty-first day of December, 1954, in consideration of a monthly rental of $65.12. The contract provided that the lessee was granted the option, at the expiration of the lease, of renewing the same for. an additional period of five or ten years. In the event the lessee- exercised such option, it was provided that the monthly '¡rental for the first five years of the renewal term would be increased to $100 per month, and should the lessee renew the lease for the ten-year period, the monthly rental for the second five years of the renewal term would be $125 per month.
The lease contract also contains the stipulation that the lessee bound himself to pay all City and State taxes on the property as they became due; that as a further consideration the lessee agreed' to maintain special fire and windstorm insurance during the full term,- the policy to be made payable to Walter C. McGee and/or his mortgagee, the policy to be in the amount of $6,000 for the fire coverage and $3,000 for the windstorm insurance.
In 1944 when the lease was confected the property was unimproved, and by the terms of the lease the lessor agreed to construct, in accordance with certain plans and specifications which were made part of the lease, a certain building, toward the cost of which the lessor agreed to pay $6,000. The evidence shows- that in 1950 Boulmay entered into :a sublease with Palm Restaurant and Cocktail Lounge, a corporation, which is now in possession of the property under the sublease and pays Boul-may a monthly rental of $300. The evidence shows that Palm Restaurant and Cocktail Lounge has placed approximately $30,000 of improvements on said property at ho cost to the , lessor.
At the termination of the initial term of the lease, that is,' on December 31, Í954, Boulmay exercised his option ,of renewing the lease for an’ additional period of ten years. [
The Boulevard Investment Company on May 22, 1953, brought this present suit against Boulmay for a rescission of the lease on the grounds that Boulmay allowed the taxes due the City of New Orleans for the year 1953 to become delinquent and made no effort to pay them; that the lessee exceeded his right of occupancy by using adjacent lots which are owned by the plaintiff but which are not a subject of the lease; that the occupants of the premises have failed to maintain garbage containers in a sanitary condition as required by the Department of Health of the -City of New Orleans; that Boulmay without consulting the lessor violated his obligation to, carry fire and windstorm insurance on the property in that he obtained a fire and windstorm policy containing a deductible clause; that Boulmay failed to notify the plaintiff of the renewal of the insurance policy and failed to supply lessor with a copy of the same.
Defendant denies he breached any of the conditions of the lease; he alleges that all tax bills, both City and State, were always sent to the lessor, and that the lessor upon receipt of the same in turn would transmit them to him and he would then pay the taxes. It is alleged that although the 1953 City -teal estate tax bill was received by the lessor, the 'said bill was never sent to defendant, but that plaintiff, or its agent, without the knowledge of defendant, paid the taxes and never notified defendant thereof; that the amount of the taxes so paid was $197.93, which amount defendant deposited in the registry of the court for plaintiff’s account. In .a supplemental and amended answer defendant, in the alternative, makes the plea that should the grounds alleged by plaintiff be sufficient causes for the cancellation of the lease, then in that event he prayed that plaintiff be required to pay to him the value of all improvements placed on the leased property during the term ’ of the lease. , , '
After a trial on the merits, the suit was dismissed and plaintiff has appealed.
*919 The only two grounds, for rescission of the lease urged before us are that defendant violated its terms with respect to .his obligations to pay the 1953 City taxes and to keep the property. adequately insured.
It was testified to by the Secretary of the Delinquent Tax Department of the City of New Orleans that the 1953 taxes became delinquent on February 2, 1953, which date of delinquency was extended to February 17. The bill for 1953 taxes had been sent by the City of New Orleans to the plaintiff in whose name the property was assessed. Thére is no showing whatever that plaintiff ever sent the tax bill to defendant, and defendant’s testimony is to the effect that he attempted to pay the 1953 taxes at the City Hall but was unable to make payment because he did not have the bill. At any rate, the 1953 City taxes in the amount of $197.93 were paid on March 30, 1953, to which no penalties were added although the taxes were then delinquent. The payment was made by the First Homestead Association for the account of and to accommodate plaintiff.
Under the circumstances related, we do not believe that the defendant was in violation of the provisions of the lease respecting the payment of the 1953 City taxes on the property, for the simple reason that the plaintiff, when it received the tax bill from the City of New Orleans failed, in keeping with the custom established by the parties, to send the bill to defendant. It was shown that prior to 1953, .Mr. David L. Herman, a local attorney, was a member of the Board of Directors of the plaintiff corporation. Mr. Herman testified that when he received the various tax bills on behalf of plaintiff, he would pay the taxes and then call upon defendant for reimbursement and that defendant was always cooperative and only on one occasion was' tardy in refunding to the corporation the amount paid and that this concerned the State taxes for 1951. There is testimony which emanates from defendant’s accountant, Calamia, to the effect that there was an tinderstand-ing between Mr. Herman and himself that the paid tax bills for each year would be mailed by Mr. Herman to the defendant.
Counsel for plaintiff seem to recognize that this was the course of conduct between the parties, and that the defendant under the tacit understanding was not' to pay the taxes until plaintiff either transmitted the tax bill to him for payment or that defendant would reimburse plaintiff only after plaintiff paid the tax bill. But counsel say that regardless of what may have been the arrangement in connection with the payment, of the taxes for prior years, conditions became changed in 1953 because, when a new Board of Directors had been elected by plaintiff’s stockholders, defendant was notified in. writing and by registered mail on February 18, 1953, that in the .future plaintiff would, expect him to promptly comply with all of the terms and conditions of the lease and that there would be no further toleration or ratification of defendant’s sporadic lapses in the fulfillment of any of his lease obligations.
It cannot be disputed that the lessee may‘be expelled from the property if he fails to pay the rent when it becomes due. LSA-C.C. art. 2712. The nonpayment by the lessee of taxes and insurance premiums under certain circumstances might be considered as the nonpayment of rent. But where, due to an understanding between the parties, either positive or tacit, the lessee was left to suppose that absolute punctuality of payment would not be expected of him and that a delay would not be objected to, the lessor is not'entitled to rescind the lease and eject the tenant who fails to pay on the very day of maturity.
The evidence is overwhelming to the effect that the plaintiff had never required that defendant pay thé taxes promptly; on the contrary, plaintiff always acquiesced in defendant’s making payment after the taxes matured. The notification given defendant that plaintiff would no longer tolerate any delinquencies is unavailing to plaintiff for the good, and sufficient reason that the notification was sent to defendant only after .the 1953 City taxes *920 had become delinquent and at a time when defendant relied, as he' had a right to do, .on the custom that he would either be sent the tax bill or be notified when plaintiff had paid the taxes. In other words, the notification of February 18, 1953, if it has future effect, was too late to be effective as to the 1953 taxes;
The question of the type of fire and windstorm insurance which should have been secured by defendant requires little discussion. It is not disputed that the policy .contains the co-insurance or deductible clause about which plaintiff complains, but whether this is 'the type of insurance policy contemplated by the lease agreement is of no moment, because an. identical policy has always been carried and the current policy, which was issued on November 22, 1952, was, according to the insurance agent, written at the request of both of the parties and it seemed to have been satisfactory to them. We do not think ' that under these circumstances the plaintiff has any right to complain that the policy did not furnish the coverage or protection , which defendant was obligated to supply. It is true that defendant did not pay the pre-.mimum for the policy -until January 26, 1953, but we do . not consider this fact to be material for the reason that the insurance agent .carried the premium on open account for defendant, and it, is not shown or even intimated, that there ever was any threat that the insurer would cancel the policy or that plaintiff would be deprived o.f insurance coverage.
It may be that if the lessor, throughout the term of the lease, had insisted upon defendant’s strict compliance with its terms there may have been sufficient cause fqr, the rescission .of the lease, but the plaintiff lost whatever right it had to claim a rescission by having acquiesced in defendant’s method of discharging his lease obligations.
It is patent that in 1944 when the lease was entered into calling for a' rental Of $65.12, the property subject to the lease was not'very much in demand.; since then, however, property 'in' tire área has - skyrocketed- in value and 3239 Gentilly Boulé-vard now has a rental value of sevéral times' what the original lease stipulated. The- defendant’s sublessee pays him- $300 per m«nth as rent- for the property; It is obvious that the plaintiff realizes that the $100 rental now paid by defendant is far below the amount which could be secured from another tenant, and we believe that plaintiff has a burning desire to find some excuse to dissolve the lease and eject defendant from the property. The grounds urged by plaintiff are not sufficient to accomplish that purpose,
The judgment appealed from is affirmed.
Affirmed.