BARNETTE, Judge.
This is a suit for rentals alleged to be due plaintiff-lessor for certain radar and radiotelephone equipment installed under a lease agreement on two motor vessels owned by defendant, the lessee. Plaintiff also seeks recovery of $400 for cost of removing the equipment from defendant’s vessels and attorney’s fees.
From a judgment awarding plaintiff $2,-978 for rentals and maintenance found to be due under the lease agreements, the defendant has brought this suspensive appeal. Plaintiff has answered the appeal praying that the judgment be increased to $3,315 and for reasonable attorney’s fees. Appellee further seeks damages for frivolous appeal as to the sum of $2,566.50 which it alleges is not at issue. In the alternative, appellee prays for affirmance of the judgment appealed from.
There is little or no dispute of the essential facts. The real issue arises out of plaintiff’s refusal to give service and main *677 tenance on the equipment after certain dates, which defendant contends relieved it of the obligation of payment of rentals. Defendant, however, admits that it was in default on rental payments when the service and maintenance was refused, and concedes its obligation for payment of rental and service charges to the dates of plaintiff’s refusal of service. This amount defendant submits is $1,026.60, but no tender of that amount has been made.
By a “Lease and Maintenance Agreement” plaintiff installed radar equipment on defendant’s MV. “Martha Jane” for a monthly rental of $105 and monthly maintenance charges of $35 under a five-year contract, beginning March 14, 1962. By identical contract for five years, beginning May 1, 1962, radar equipment was installed on the MV. “Anne.” Under a “Lease Agreement” there was also installed on the “Anne,” radiotelephone equipment on a five-year contract, beginning May 1, 1962, at the monthly rental of $65. Plaintiff was obligated to maintain and service this equipment, but no certain portion of the $65 was specified for that service. All three lease agreements provided for monthly payment in advance.
Defendant admits that from the inception of the contracts, it never made a timely monthly payment and that the arrearage was the subject of many requests for payment in whole or in part to the end that service and maintenance could be continued. On several occasions service was refused until defendant made a payment on account. Plaintiff used this weapon to force payments with partial effect, but the account was never brought to date. Defendant’s payments have been in total default since February 1, 1964. After March 30, service on the equipment on the “Anne” was refused, and was discontinued on the “Martha Jane” after June 6. The equipment remained on defendant’s vessels until removed by plaintiff from the “Martha Jane” on October 17, and from the “Anne” on November 15. Under the terms of the contracts, the plaintiff had the right, at its option, to remove the equipment and terminate the agreement at any time after a 30-day payment default.
We agree with the trial judge in his finding that the parties, by custom or mutual acquiescence in the irregularity and tardiness of payments and in delay of service, altered the strict provisions of the contracts. By their custom and tacit agreement of withholding service until payment was made, they created a situation at variance from the specific terms of the contracts which justified plaintiff’s refusal of service until a payment on account was made. This had become the practice between the parties. The defendant cannot now be heard to complain of a situation which came about as the result of its failure to comply with its contractual obligation. Plaintiff might have exercised its option of terminating the agreement after the first 30 days of default, but its delay in doing so until it became evident that no further payments on account would be made, is explained by the practice which had become the custom between the parties.
There is a well-established principle of law in our jurisprudence that where monthly rental payments or installments are customarily accepted by the payee after the due date, the custom or course of conduct, by acquiescence of the parties, has the effect of altering the original contract. In such cases strict enforceability of acceleration clauses and similar provisions of the contract have been held to be waived. There are other cases which hold that the payee must give notice that in the future the payments must be made timely and no further indulgence will be allowed and that strict enforcement of the contract will be applied. Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271 (1911); Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926 (1908); Romero v. Lamantia, 137 So.2d 389 (La.App. 4th Cir. 1962); Boulevard Inv. Corp. v. Boulmay, 79 So.2d 917 (La.App.Orleans 1955); Rex Credit Co. v. *678 Kirsch, 4 So.2d 797 (La.App.Orleans 1941) ; Maestri v. Nall, 145 So. 128 (La.App. Orleans 1933).
In other cases, an exception has been made to the foregoing- principle when the lessor’s acceptance of tardy payments does not result from a voluntary acquiescence in the delay, but “because of an unwilling and forced indulgence on his part.” Briede v. Babst, 131 La. 159, 59 So. 106 (1912) ; Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corp., 177 So.2d 406 (La.App. 4th Cir. 1965) ; Rex Credit Co. v. Kirsch, supra ; Maestri v. Nall, supra.
In all of those cases it was the lessor who sought to hold the defaulting lessee to a strict enforcement of the contract provisions. In this case it is the defaulting lessee, who, by way of defense, seeks to hold the lessor to a strict enforcement of the contractual provisions relating to service and maintenance. Conceding, on the basis of the evidence, that the lessor was repeatedly tardy in the giving of service and maintenance (in which tardiness the lessee acquiesced), it cannot be said that the lessee was forced unwillingly into this acquiescence by any default of the lessor. If either of the parties’ default forced an unwilling indulgence, it was the primary default of the lessee in not paying the monthly rental in accordance with the terms of the contracts. In this the lessor, willingly or not, did grant indulgence. The defendant cannot find protection from a technical situation which its own fault forced into being.
The parties are in agreement that the electronic equipment is highly technical and that service and maintenance by persons skilled in electronic instruments of the type in question is required to insure continuous satisfactory performance. For this reason the service to the .radiotelephone is included in the rental agreement. For the radar equipment a stipulated amount.- o-f $35 is charged for each instrument regardless of the extent to which maintenance is required or the actual expense incurred. Maintenance is the obligation of the owner-lessor.
The three contracts contain identical clauses providing for indemnification of lessor for certain loss or damage upon termination of the lease. Plaintiff’s attempt to introduce evidence of the cost of overhauling the equipment after repossession as an element of loss was properly rejected by the trial court. First, it was an attempt to enlarge the pleadings; and secondly, since repair and maintenance was the obligation of the lessor and $35 per month had been stipulated as a liquidated cost thereof, plaintiff would be limited to that amount. On this theory and the alteration of the specific terms of the contract by custom and mutual acquiescence, the trial court held that plaintiff was entitled to recover this $35 per month until termination of the leases, “whether or not it is considered as a portion of the rent.” We find no error in this conclusion.
Plaintiff-lessor’s equipment remained in the possession of defendant until the respective dates of removal. It must be assumed, in the absence of testimony to the contrary, that it was used. In its amended answer, defendant alleged “ * * * the said equipment was worthless unto defendant during a large portion of the time for which the rental is sued for herein * * It is not disputed that service was refused after March 30 and June 6, respectively, and it may be assumed that service would not have been requested if the equipment was functioning perfectly. Nevertheless, there is not one word of testimony in the record before us that the equipment was not usable, nor the time or duration of the periods of nonusability; nor is there testimony that it was not in fact used by defendant until its repossession. Defendant has failed to carry the burden of proof of its allegation of nonusability, and is obligated to pay the rental during the time it was in his possession and use. Shear v. Karno, 150 So.2d 916 (La.App. 4th Cir. 1963).
*679 The contracts provide for removal of the equipment upon termination of the agreement “for any cause whatever” and the expense of “removal to he borne by Lessee.” Plaintiff prayed for $200 for cost of removal of the equipment from each vessel. In the trial judge’s reasons for judgment, he found plaintiff to be entitled to $200 for removal of the equipment “from one of the vessels,” not identified. The judgment fails to include this item.
Plaintiff’s service manager, Ronald Daigle, testified that the cost of removal of the radiotelephone equipment from the “Anne” was $37.50 and the cost of removal of the radar equipment, $123.30. The removal of the radar from the “Martha Jane” was $130.30. This testimony was not challenged and plaintiff is, therefore, entitled to recover the aggregate of these expenses, $291.10, under the terms of the contracts.
Plaintiff’s prayer for attorney’s fees must be rejected. In the absence of a statutory provision or a stipulation in the contract for the payment of attorney’s fees, we know of no authority for the allowance of same. Breaux v. Simon, 235 La. 453, 104 So.2d 168 (1958). We fail to find any provision in the contracts relative to payment of attorney’s fees, and none has been brought to our attention.
The rentals actually charged the lessee were on a 10-percent fleet discount basis, which was explained by plaintiff’s witnesses. This was the basis used by the trial court in determining the amount due plaintiff. Based on the discount rate, the defendant admits its indebtedness to plaintiff in the sum of $1,026.60, this amount being the acknowledged rental in arrears to the dates of refusal of service. On the authority of Dwyer Lumber Co. v. Murphy Lumber Co., 116 So.2d 64 (La.App. 1st Cir. 1959), and the cases cited therein, plaintiff is entitled to damages for frivolous appeal insofar as the appeal suspended the execution of the judgment to the extent of $1,-026.60. Accordingly, we find that $100 is a proper allowance for this damage. LSA-C.C.P. art. 2164. The amount above defendant’s acknowledged indebtedness is contested on grounds which we find not to be frivolous.
We find the defendant to be in arrears from February 1, 1964, and that the rentals were due on the first of each month in advance. Therefore, its indebtedness for the radar equipment on the “Martha Jane” at $126 per month (the contract price of $140 less the 10-percent discount) for February through October, 1964 (nine months), amounts to $1,134. The rentals for the radar and radiotelephone on the “Anne” from February through November,' 1964 (ten months), at $205 less 10 percent, or $184.50, amounts to $1,845. The aggregate amount due for rentals is $2,979. To this figure should be added $291.10 for the cost of removal of the equipment upon termination of the agreements.
The judgment appealed from is, therefore, amended by increasing the award to plaintiff Raytheon Manufacturing Company (Equipment Sales Division) against defendant Jack Neilson, Incorporated, to the sum of $3,270.10 with legal interest thereon from date of judicial demand.
It is further ordered that there be judgment in favor of plaintiff-appellee against defendant-appellant in the sum of $100 as damages for frivolous appeal.
As amended the judgment appealed from is affirmed at appellant’s cost.
Amended and affirmed.