SARTAIN, Judge.
Defendant appeals from a judgment of the District Court decreeing his eviction from premises he was under contract to buy from the plaintiff. The facts essential to a resolution of the issues herein presented are not a serious dispute. We are of the opinion that the trial judge erred in his application of the facts to the law and reverse.
Under date of April 23, 1964, plaintiff entered into a “Contract to Sell” Lot 365 of North Merrydale Subdivision in the Parish of East Baton Rouge, Louisiana, for the recited consideration of $17,500.00. Defendant paid the sum of $1,000.00 on the execution thereof and then agreed to pay the sum of $125.00 per month. Interest at the rate of &/z% per annum was to be deducted from the monthly payment and the balance thereof was to accrue to the benefit of the defendant until such time as he had paid the sum of $15,000.00 towards the purchase price. Whereupon, plaintiff was to execute an act of sale with mortgage to the defendant, reciting a cash consideration of $16,000.00 and a note payable at the rate of $125.00 per month, including interest at &/z% per annum from its date, until paid, in the principal sum of $1,500.00. Defendant was further obligated to pay the taxes and to keep the improvements adequately insured. Several months later plaintiff added improvements to the property valued at $3,000.00 and the contract was amended to increase the total purchase price to $20,500.00 and the monthly payments to $150.00. The supplemental agreement was executed on December 31, 1964. It specifically-provided that all other terms of the *916 original contract were to continue in full force and effect.
The original contract provided:
“In the event that the Buyer fails at any time to make any two (2) such monthly payments promptly when due, or should fail to execute the act of sale contemplated, the seller shall have the option to cancel and terminate this contract.”
In the plaintiff’s suit it is alleged that the defendant failed to make the payments due on November 1 and December 1, 1970.
This suit was filed on January 26, 1971. On December 1, 1970, defendant made a payment of $150.00 and argues that this was the payment due for the month of December, 1970, and therefore he was not in arrears for the payments alleged in the petition. Plaintiff counters that he applied this payment to the one due on November 1, 1970. It was admitted by all parties that on January 1, 1971, the defendant was in arrears the sum of $610.00. This represented several monthly payments and taxes for 1969 and 1970. Accordingly, plaintiff urges that these arrearages constituted a substantial breach in the contract which warranted its cancellation and justified defendant’s eviction.
The record discloses that on January 4, 1971, when the defendant contacted plaintiff relative to making full payment for the arrearage, he was presented with a letter of eviction dated December 31, 1971. Undoubtedly, plaintiff had decided on his course of action prior to the tender of the arrearages by the defendant on January 4, 1971.
The record further reveals that on many occasions during the previous several years, defendant accumulated substantial ar-rearages but on each instance he paid the same. The situation that was permitted to exist and the custom that was followed between plaintiff and defendant during this period of time can best be illustrated by the following testimony of the plaintiff:
******
“Q. How has Mr. Paul been about paying the rental or installments prior to this time? Has he always been prompt ?
A. No, sometimes he would be but he has been behind several times and one time, he was approximately $900.00 behind. I went along with it, trying to be big hearted about it. Several times it was $400.00, $500.-00 and it was $610.00 this time. That’s the way it’s been going on for six years. So finally I got enough of it. That’s all its amounts to and that’s why I’m taking this action because it’s no personal meanness or anything like that. I’ve always lived up to my part of the contract. Never failed one time.”
******
“Q. Mr. Jones, you testified that they had been behind for some time. Did you ever raise any objection to them paying late?
A. Well, they would tell me, you know, a hard luck story and I went along with him. I was never mean to him or anything like that. I done my best for him. (Emphasis ours.)
******
Defendant admits to the accuracy of the above quoted testimony of Mr. Jones but asserts that at no time did plaintiff ever protest his late payments or advise him that late payments in the future would not be accepted. Defendant further testified that during the course of his occupancy of the premises he had personally expended the sum of $7,000.00 on improvements.
In resolving this controversy in favor of plaintiff, the trial judge in his written reasons stated:
“The defendant also argues that the plaintiff is not entitled to eviction because delinquent and irregular payments had become the custom between them. However, the Court was not convinced by *917 the evidence at trial that plaintiff ever acquiesced in the late payments. The plaintiff testified that he consistently tried to collect the payments timely and always insisted on prompt payment. The Court is of the opinion that plaintiff never willingly accepted the defendant’s delay in paying the installments but simply had no choice in the matter. The Court concludes that there was no custom of accepting late payments which would preclude plaintiff from evicting the defendant.”
Our review of the record forces us to disagree with the conclusion reached by the trial judge. While it could be reasonably claimed that the plaintiff was not happy or pleased with the arrearages that were permitted to accumulate, the record contains no evidence of any protestation on the part of the plaintiff. Though he permitted the payment of these arrearages from time to time out of “kindness”, he nevertheless acquiesced in the delinquent payments for some six years and gave the defendant every reason to believe that the next delinquency would not result in a termination of the contract and eviction. Acquiescence in cases such as this may be positive and verbal or it may be tacit. Absent any evidence in the record of any positive protestations, we must conclude that his acquiescence was tacit and that the defendant should have been placed in default to put an end to the practice and custom that these parties had followed for a number of years. Standard Brewing Company v. Anderson, 121 La. 935, 46 So. 926 (1908); Saxton v. Para Rubber Co. of Louisiana, 166 La. 866, 118 So. 64 (1928); Edwards v. Standard Oil Co. of Louisiana, 175 La. 720, 144 So. 430; Leinhardt v. Marrero Land & Improvement Association, Ltd., 137 So.2d 387 (4th La.App.1962).
Inasmuch as we have reached the decision that it is necessary for plaintiff to place defendant in default or otherwise serve notice on him that late payments will no longer be accepted, it is not necessary' for us to consider other issues raised by the defendant. Particularly where defendant argued that the “Contract to Sell” was in fact a “Bond for Deed” and therefore governed by LRS 9:2941 through 9:2947 and particularly 9:2945 which requires the placing in default and forty-five days notice to accord to the purchaser the opportunity to satisfy the purchase price agreed upon. It suffices here to say that under the terms of the contract presently under consideration plaintiff is entitled to receive his payments promptly in the future but he must advise the defendant of his intention to henceforth require strict adherence to its terms.
Accordingly, for the above and foregoing reasons, the judgment of the District Court is reversed and judgment is rendered in favor of the defendant and against the plaintiff, dismissing plaintiff’s suit at his cost.
Reversed and rendered.