315 So.2d 790 (1975)
HIMBOLA MANOR APARTMENTS, Plaintiff-Appellee,
v.
Geraldine ALLEN, Defendant-Appellant.
No. 5044.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
*791 Edward D. Rubin, Lafayette, for defendant-appellant.
Calvin T. Guidry, Lafayette, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a suit by a landlord (Himbola Manor Apartments) to evict a tenant (Geraldine Allen) for non-payment of rent. Consolidated with the present suit for trial and on appeal is a companion case, Himbola Manor Apartments v. Frank, 315 So.2d 795 (La.App. 3rd Cir. 1975), in which plaintiff seeks the eviction of Linda Leday Frank, also for non-payment of rent. We are deciding both cases this date and in this opinion will discuss issues common to the companion appeals. From a judgment ordering defendants to vacate the premises, they have appealed. Plaintiff has answered the appeals, seeking damages from the defendants allegedly resulting from these appeals.
The facts of this case are that defendantGeraldine Allen entered into a contract of lease on September 18, 1974, with the defendantapartment complex, occupancy to begin on October 18, 1974. The lease provided that rent payments were to be made on or before the first day of each calendar month at the office of the lessor, without the necessity of demand. It further provided for a five day grace period during which the lessee could pay the rent, in addition to a $5 penalty assessed for not being punctual. A full month's rent (for the last two weeks of October and the first half of November) was paid by the tenant *792 on September 18, 1974, with a balance of the November rent being paid on November 1, 1974. The December rent was paid on December 3, 1974. The rent which fell due on January 1, 1975, was not paid on the first day of the month or within the five day grace period. On January 6th Mrs. Allen contacted the apartment manager, Mrs. Geraldine Miller, and informed her that she would be unable to immediately pay the rent, allegedly because she had not received a social security check and would not do so for a number of days due to administrative difficulties. Mrs. Miller in turn told the tenant she should try to borrow the money. On January 11th Mrs. Allen received a "Notice to Leave the Premises" (the same being certified, return receipt requested) before January 18th, due to non-payment of rent, or that legal measures would be taken. On January 13th the tenant tendered rent payment but it was refused by the assistant manager, who indicated in testimony that the apartmentcomplex management was not allowed to accept rent after the foregoing notice was served on the tenant. The following day Mrs. Miller likewise refused to accept the overdue rent. Mrs. Allen did not thereafter remove herself from the apartment and this suit for eviction was filed on January 21, 1975, with the trial date set for January 27th.
Linda Leday Frank, defendant in the companion suit, was also a tenant at the Himbola Manor Apartments, signing the aforementioned lease on October 14, 1974. The rent for the remainder of October and for all of November was paid by her on December 2, 1974. The rent falling due on January 1, 1975, was not paid on or following that date. Testimony indicated that some time previous to the 10th of January Mrs. Frank went to the manager and told her she was not working and asked if she could wait until the 16th of the month (when she allegedly would receive a welfare check) to pay her January rent. Mrs. Miller in turn also informed her that she should try to borrow the money. On January 11th Mrs. Frank received, as aforementioned, a "Notice to Leave the Premises" before January 18th, due to nonpayment of rent. Following the abovementioned notice, Mrs. Frank, on or about January 14th or 15th, did in fact call and offer to pay the rent, which was refused, and this suit for eviction was subsequently filed.
At trial of the consolidated cases defendants resisted eviction, contending essentially that such action was not warranted for the following reasons: (1) Defendants offered to pay the rent before suit for eviction was filed; (2) A "custom" existed between the apartment complex and its tenants whereby rental payments were accepted late, thereby altering the express provisions of the lease agreement, and no notification was given the lessee that if rent was not paid punctually, eviction would result.
Following a trial on the merits judgment was granted in favor of the plaintiff-apartment complex. In so ruling, the City Judge found the foregoing allegations of the defendants unsupported by the facts and the law of this state.
The first issue presented on appeal is whether an established custom of late rental payments existed, and if so, whether same prevented the lessor from evicting the defendant-tenants.
Louisiana Civil Code Art. 2710 declares in part that: "The lessee is bound:. . . . (2) To pay the rent at the terms agreed upon." Civil Code Art. 2712 further provides that "The lessee may be expelled from the property if he fails to pay the rent when it becomes due." The summary procedure for such eviction is provided for in the Louisiana Code of Civil Procedure, Art. 4701 et seq.
There is, however, a well established general rule in the jurisprudence of this state that where a lessor-owner customarily accepts rental payments after the date on which they are due, such "custom" *793 by acquiescence of the parties, has the effect of altering the original contract in respect to punctuality of rent payments. Briede v. Babst, 131 La. 159, 59 So. 106 (1912); Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926 (1908); Raytheon Manufacturing Company (Equipment Sales Division) v. Jack Neilson, Inc., 196 So.2d 675 (La.App. 4th Cir. 1967); Rex Credit Co. v. Kirsch, 4 So.2d 797 (La.App. Orl. Cir. 1941).
The basis for such a rule seems to be the prevention of a lessor-owner "misleading or lulling a tenant into a false sense of security" by accepting late rent payments for an extended period, without demand for punctuality, and then at a future date of his own choosing cancel the lease once payment becomes overdue. Briede v. Babst, supra; Goldblum v. Harden, 188 So.2d 630 (La.App. 4th Cir. 1966); Boulevard Investment Corp. v. Boulmay, 79 So.2d 917 (La.App. Orl. Cir. 1953).
When such "indulgences" on the part of the lessor are found to have created the abovementioned "custom", the landlord's right to strict enforceability of the lease rental provisions is considered waived, and in order to hold the lessee to the explicit terms of the lease, advance notice must be given of the lessor's intention in the future to strictly enforce the lease provisions and collect the rent as due. Standard Brewing Co. v. Anderson, supra; Jones v. Paul, 254 So.2d 915 (La.App. 1st Cir. 1971); Leinhardt v. Marrero Land and Improvement Association, Ltd., 137 So.2d 387 (La.App. 4th Cir. 1962).
The foregoing rules, however, have no application where the lessor has made frequent and unsuccessful demands for the rent or where acceptance of tardy payments is because of "unwilling and forced" indulgence on the lessor's part. Wall v. Green, 228 La. 59, 81 So.2d 769 (1955); Redon v. Armstrong, 215 La. 307, 40 So.2d 474 (1949); Briede v. Babst, supra, Raytheon Manufacturing Company (Equipment Sales Division) v. Jack Neilson, Inc., supra; Farmers Gas Company, Inc. v. LaHaye, 195 So.2d 329 (La.App. 3rd Cir. 1967); Goldblum v. Harden, supra; Mossy Enterprises, Inc. v. Piggy-Bak Cartage Corporation, 177 So.2d 406 (La.App. 4th Cir. 1965); Maestri v. Nall, 145 So. 128 (La. App.Orl. Cir. 1933); Chapman v. Burke, 145 So. 560 (La.App.Orl. Cir. 1933).
In alleging the existence of a custom of accepting late rent payments, the plaintiffs contend among other things that "most if not all of the tenants paid their rent at a date subsequent to the first of the month" and that defendants themselves were late on several occasions, with none of the parties ever being advised that such delinquency would subject them to eviction. The record, however, fails to support these allegations or the existence of a "custom" as contended.
It was stipulated by counsel for defendants that some of the tenants do in fact pre-pay rent. Mrs. Miller indicated that out of 136 tenants approximately 20 to 25 pre pay their rent each month. The record further indicates that the defendants, after their initial rent payment upon occupancy, were tardy in paying their rent only one time (other than of course January, 1975), i.e. Mrs. Frank on December 2, 1974, and Mrs. Allen on December 3, 1974. Apartment records kept on six other tenants (chosen by defendant's attorney out of the entire tenancy) and testimony of two residents at trial also showed that rent had on occasion been paid from 2 to 10 days late. One tenant also testified that she paid her January, 1975, rent 13 days late, but did so only because she was willing to pay same on the afternoon of Friday, January 10th, yet arrived at the apartment complex office afterhours and was informed by the manager that she could wait until the following Monday. Mrs. Miller further indicated in testimony that she was forced into waiting *794 for overdue rent from many of her tenants who could not pay until the 2nd or 3rd of the month, i.e. the date they received their checks from whatever source. She further stated although rent was due on or before the first of each month there was still a five-day grace period, and that she even waited ten days before proceeding against the tenant.
Applying the foregoing jurisprudence to the facts of this case, the evidence reflects that there existed no established custom or practice of voluntary acquiescence in late rent payments. Clearly the tenants were not "misled or lulled into a false sense of security." By their own testimony they could not pay the rent as required.
Defendants also allege that their lessor had no right to evict them inasmuch as they offered to pay rent before the suit for eviction was filed. Edwards v. Standard Oil Co. of Louisiana, 175 La. 720, 144 So. 430 (1932) is cited as authority for this contention.
This exact question was previously raised before this court in Farmers Gas Company, Inc. v. LaHaye, supra. In Farmers Gas, J. Culpepper, speaking for the court, points out that in the course of the Edwards case the court made a statement, which standing alone, would import such a holding, but that the court actually decided the case on another point. Accordingly, this court in Farmers cancelled the lease even though the rent therein had been tendered prior to filing of the suit for cancellation. We reaffirm this holding today. See also: Comment, 21 Tul.L.Rev. 256,261 (1946).
As aforementioned, plaintiff also answered defendants' appeals, seeking damages including (1) the monthly rent owed by the defendants from the rendition of the district court judgment until the termination of these proceedings, since defendants have refused to vacate the premises, and (2) reasonable attorney's fees for a "frivolous appeal".
On the first point, the law of this state is clear to the effect that damages, in the absence of a special provision, may only be recovered in an ordinary proceeding. Major v. Hall, 262 La. 243, 263 So.2d 22 (1972). The only trial in the district court was on a rule to show cause why eviction should not ensue and for possession of the premises. C.C.P. Art. 2592 does not provide for the recovery of damages in such a summary proceeding, nor have we found or been referred to any other provision providing for same in a case of this kind.
In regard to the allegation of this being a frivolous appeal, we note our jurisprudence which holds that damages for frivolous appeal will not be allowed unless it is obvious that the appeal was taken solely for the purposes of delay or that the appellant's counsel is insincere in his view of the law he advocates even though the court be of the opinion that such a view is without merit. Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634 (1965); Hodson v. Hodson, 292 So.2d 831 (La.App. 2nd Cir. 1974); Roberie v. Sinclair Refining Company, 252 So.2d 488 (La.App. 3rd Cir. 1971); Benoit v. Travelers Insurance Company, 251 So.2d 87 (La.App. 3rd Cir. 1971). In our opinion neither condition is present here and we therefore reject this demand.
Although under the facts as alleged by defendants the result of this opinion might seem harsh, this is the case in many eviction proceedings. As pointed out by the trial judge in his reasons for judgment: "The sadness of any eviction, particularly in a federally supported rent project, directs itself to those authorities who create and implement such projects. The Court cannot rewrite the terms of such contracts *795 or ignore the explicitness of the lease terms for sentimental reasons."
For the above and foregoing reasons the judgment of the trial court is affirmed at defendants-appellants' costs.
Affirmed.