361 So.2d 1285 (1978)
QUALITY MATERIALS OF TANGIPAHOA, INC.
v.
LABARAMA, INC.
No. 12057.
Court of Appeal of Louisiana, First Circuit.
July 10, 1978.
Rehearing Denied August 31, 1978.
Writs Refused October 20, 1978.
*1287 L. B. Ponder, Jr., Amite, for Quality Materials, plaintiff-appellee.
Thomas B. Waterman and Tom H. Matheny, Hammond, for Labarama, Inc., defendant-appellant.
Edward B. Dufreche, Ponchatoula, for John Halbert & E. B. Dufreche, interveners.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
Plaintiffs, Quality Materials of Tangipahoa, Inc. (Quality), Mrs. Frances Tycer Evans and Miss Norma Lee Tycer (Lessors), brought this action to dissolve a sand and gravel mining lease granted defendant, Labarama, Inc. (Lessee), for alleged damage due to trespass upon Lessor's property not subject to the lease; and, for wages purportedly due Mrs. Evans, pursuant to a counter-letter wherein Lessee employed Mrs. Evans to handle the sale of sand, gravel and other products mined from the leased premises. The lease entered into on May 24, 1967 covers a 24 acre tract belonging to Quality and leased for the purpose of mining sand, gravel, topsoil and other products contained therein. The lease is for a primary term of 5 years commencing June 1, 1967, but stipulates its indefinite continuation at Lessee's option. Lessee reconvened, seeking specific performance and damages for alleged wrongful eviction and breach of Lessors' obligations under the lease. Interventions were filed on behalf of Edward B. Defreche and John H. Halbert who, on February 27, 1974, purchased from Lessors certain properties reputedly covered by the lease. From judgment in favor of Lessors and Intervenors ordering cancellation of the lease, Lessee has appealed. Mrs. Evans and Miss Tycer have answered the appeal praying for damages, disallowed by the trial court, for alleged trespass by Lessor upon property personally owned by said parties and not subject to the lease. Mrs. Evans has also answered the appeal, praying for wages due by virtue of the mentioned counter letter, which claim was also rejected below. We reverse the judgment ordering cancellation of the lease and order its reinstatement. We affirm the judgment disallowing Lessee's claims for damages, and also affirm the judgment rejecting the claims of Mrs. Evans and Miss Tycer for damages for trespass upon their personally owned property, and for past wages due Mrs. Evans.
The following lease provisions are pertinent herein:

*1288 "The term of this lease shall be for a period of five years beginning on the 1st day of June 1967, with an option on the part of the Lessee to continue the lease indefinitely so long as the lease is operative under the same terms and conditions as hereinafter described. It being understood and agreed that the Lessee may begin operations at any time during the first year of said contract.
It is further understood and agreed by and between the parties that when the Lessee begins operation the said lease will be operative indefinitely so long as Lessee maintains mining from said land provided, however, that Lessee may be inoperative for as long as one hundred eighty (180) days.
It is specifically provided that in the event that all merchantable sand, clay, gravel, topsoil, pea gravel, etc. that it is economically feasible to mine is mined and shipped from the leased premises prior to the expiration of the said five years, then in that event the lease automatically expires and becomes of no force and effect concurrently with the depletion of all merchantable sand, gravel, clay, pea gravel, topsoil, etc. It is specifically provided that it is the Lessee's privilege to decide when and if all merchantable sand, gravel, clay, topsoil, pea gravel, etc. that it is economically feasible to mine has been mined.
Provided, however, that after all the merchantable sand, gravel, clay, topsoil, pea gravel, etc. that it is economically feasible to mine on the above described site has been mined, then it is the option of the Lessee to move the mining equipment to another economically feasible site on property owned by the Lessors, and particularly any of the following described property, to-wit: . . .
In that event, the said Mrs. Frances Tycer Evans, Miss Norma Lee Tycer and Miss Andrea Jane Evans will transfer the desired property to the Quality Materials of Tangipahoa Parish, Inc. . . .
The royalties above referred to shall be paid by the Lessee to the Lessor on the 15th day of each calendar month for all sand, dirt, clay, gravel, topsoil, pea gravel, wash gravel, etc. mined or removed and sold by the Lessee during the preceding calendar month. The Lessee binds and obligates himself to commence mining operations as soon as feasible and then engage, pursue and conduct sand, gravel, clay, topsoil, pea gravel, etc. mining operations diligently on the property described herein, during the term of said lease and to pay the rental and royalties in accordance with the stipulations shown above."
Lessee commenced operation on the 24 acre (primary) tract described in the lease and continued operation thereon until some time prior to March 1, 1976, when Lessee decided it was no longer feasible to mine the primary tract. On or about March 1, 1976, Lessee began operation on a 131 acre tract described in the lease as one of the alternate tracts to which Lessee might shift its operation. This land was then and still is in the name of Mrs. Evans and Miss Tycer who are sisters. It constitutes their "homesite" on which is situated the residence in which they live. In 1975, Lessee served notice of intent to move operations to the homesite, but delayed the move until later at Lessors' request, in order not to disturb Lessors' growing corn crop. Operation on the homesite commenced about March 1, 1976, and after considerable topsoil had been sold from the 131 acre tract, Lessors enjoined further operation thereon.
A counter-letter, dated May 24, 1967, provides that Lessee shall operate as "miners and producers" and that Lessors shall operate as "owners and producers". It also stipulates that Lessee will use Lessors' equipment except where needed equipment is not owned by Lessors; that Lessor will run the office and handle the sales of material produced; and that Lessee will pay Mrs. Evans $25.00 a week to be adjusted up according to production, to a maximum of $75.00 per week.
At commencement of operation on the primary tract, Mrs. Evans kept a record of yardage shipped and was paid pursuant to *1289 the terms of the counter-letter. At a time not fixed precisely in the record, the accounting responsibility was assumed and discharged by Lessee who has continued this function to the time of suit. It is conceded that Mrs. Evans had not performed any service for a number of years and has received no compensation since accounting responsibility has been undertaken by Lessee. Mrs. Evans contends that she was forcibly prevented from discharging these duties. Lessee maintains she voluntarily relinquished her right to handle sales.
Lessors primarily urge invalidity of the lease for an alleged potestative condition in that Lessee is permitted to extend the lease indefinitely, at Lessee's option. We find this provision is not potestative. La.C.C. Article 2036 expressly provides that the duration of an obligation may be made dependent upon the will of the obligee.
Next, Lessors maintain that the duration of the lease is ambiguous, therefore it should be treated as reconducted after expiration of its 5 year primary term. So arguing, Lessors maintain that they have a right to terminate at the expiration of any month, which option they have exercised. We find no ambiguity in the lease term. The right of extension commences subsequent to termination of the primary term and rests with the Lessee. Such a term is analogous to the term of the lease involved in Baggett v. Mid-State Sand and Gravel Company, 326 So.2d 633 (La.App. 3rd Cir. 1976), which authority held valid a provision permitting indefinite extension of a lease.
Lessors' reliance upon Sharpe v. Jenkins, 150 So.2d 353 (La.App. 1st Cir. 1963) is misplaced in that the term of the lease involved in that case differs vastly from the term of the lease at hand.
Lessors also urge cancellation on the following alleged breaches of Lessee's lease obligations: (1) failure to maintain mining operations for a period of over 180 days; (2) failure to remove all merchantable sand, gravel, topsoil, etc. that it was economically feasible to remove from the primary tract before moving to an alternate site; (3) failure to diligently mine the primary site; (4) commencement of operation on the 131 acre alternate site without proper notice of intent to do so; (5) failure to make royalty payments on the 15th of each month as required by the lease; and (6) failure to comply with the counter-letter regarding employment of Mrs. Evans to handle sales.
It is Lessors' position that the provision "Lessee may be inoperative for as long as one hundred eighty (180) days" is ambiguous. Therefore, it is argued, the provision should be interpreted adversely against Lessee to mean an accumulated 180 days, whether consecutive or not. Conversely, Lessee maintains that the provision means 180 consecutive days during which no operation was conducted by Lessee. It is also conceded that there is an accumulation of well over 180 non-consecutive days on which no mining occurred. As pointed out by Lessee, this total included week-ends and holidays on which operations would not ordinarily be conducted.
The trial judge made no specific finding as to the meaning of the provision that Lessee might be inoperative for as long as 180 days. In his reasons for judgment, however, the trial judge stressed the significance of a total royalty payment of only $46.68 during the 15 month interval of May 1, 1974, through August 25, 1975. We find the importance of such payments more properly addresses itself to the alleged lack of diligent operation hereinafter discussed. To hold that an accumulation of 180 nonconsecutive days of nonoperation constitutes ground for dissolution of the lease results in an eventual inevitable termination clause which appears clearly contrary to the intent of the parties as evidenced by other provisions of the contract. We hold, therefore, the only reasonable interpretation is that the term contemplates 180 continuous nonproduction days.
Lessors' contention that Lessee failed to remove all material capable of feasible economic removal from the primary tract must be resolved in the light of the lease provision vesting Lessee with the *1290 right to make that decision, and the reasonableness of such decision as reflected in the record. The record supports Lessee's claim that all material susceptible of feasible economic removal had been removed from the primary site before Lessee gave notice of intent to shift operation to the homesite. Two experts, Fred Anderson, who was appointed by the court and Wallace Adams, a Civil Engineer called by Lessee, supported Lessee's position by testifying that further operation on the primary site would be dangerous due to the possibility of cave-ins and that for all practical purposes the site had been completely mined.
Lessors failed to carry the burden of establishing that the primary site was capable of additional feasible economic production. At oral argument before this court, on authority of Rule 9-A, Uniform Rules, Courts of Appeal, Lessors attempted to offer in evidence records of alleged production from the primary tract by Lessors subsequent to institution of this action. Rule 9-A does not permit introduction of evidence at the Appellate level; it permits, in the interest of justice, consideration of legal and factual issues not specifically raised as error by an appellant. We decline to consider the evidence offered. This matter was pending for quite some time before trial. The record clearly indicates that all parties had full knowledge of the issues and ample time to prepare. We see no reason why Lessors could not have produced testimony of experts or otherwise established that Lessee breached its obligation by abandoning the primary site before it had been completely mined, if such were actually the case.
We find the most troublesome issue to be whether Lessee breached the lease by failing to mine diligently. We commence our discussion by noting that our law does not favor cancellation of leases. Warren J. Tullier et al v. Tanson Enterprises, Inc., et al, 359 So.2d 654 (La.App. 1st Cir. 1978); Stoltz v. McConnell, 202 So.2d 451 (La.App. 4th Cir. 1967); Arbo v. Jankowski, 39 So.2d 458 (Orl.App.1949).
The trial judge ordered cancellation "because of various defaults on the part of defendant and more outstanding, the payment of only the sum of $46.68 for a 15 month period of the lease from May 1, 1974 through August 25, 1975 . . . ." The "various defaults" found were not particularized. It appears that the trial judge was peculiarly impressed by such small royalty payments in a 15 month interval. His finding of the amount is eminently correct considering it is readily admitted by Lessee. Such minimal payment does not, however, per se establish Lessee's lack of diligent operation.
Lessee explained that the low volume of production and sales during this crucial period resulted from the lack of a market for the marketable sand and gravel remaining on the primary tract at this stage of operation. Lessee pointed out that the remaining gravel was small and therefore unfit for construction and road paving purposes. Lessee also noted that such gravel was usable primarily for graveling roads, and that the chief purchaser of such gravel, the local police jury, was not graveling roads during this interval. We note also that prior to this interval, Lessee had notified Lessor that all topsoil and clay had been removed from the primary site and Lessee would have to move to an alternate location for these particular materials. We deem it elementary that the exercise of diligence depends upon the facts of each particular case. Lessors offered no testimony in rebuttal of Lessee's plausible testimony explaining the reasons for extremely low production during the 15 month interval in question. Lack of production efforts during a period in which there can be no sales due to reasons beyond a lessee's control does not constitute lack of diligent operation. We find the trial judge erred in holding otherwise.
Lessors complain of lack of notice of Lessee's intent to move operations to the 131 acre homesite and that Lessee trespassed thereon by beginning operations before the property was transferred by Mrs. Evans and Miss Tycer to Quality. As noted *1291 above, Lessee reconvened herein seeking specific performance of the lease provision requiring such transfer. The record does not support Lessors' position on this issue. Significant in this regard is the testimony of Mrs. Evans that she denied Lessee access to the 131 acre tract. Additionally, the record discloses that upon suit by Mrs. Evans and Miss Tycer, Lessee was enjoined from further operation on the homesite. We concede that Lessee's proper remedy was by way of suit for specific performance to permit entry to the land over Lessors' objection. It would be most inequitable, however, to deny Lessee's rights because Lessors' refusal to transfer the property to Quality prompted Lessee's entry upon the land prior to such transfer. Moreover, Mrs. Evans and Miss Tycer signed the lease as individual lessors. As such, it is their obligation to maintain their lessee in peaceable possession. La.C.C. Article 2692.
The demand for cancellation due to Lessee's failure to make royalty payments on the 15th of each month, as required by the lease, is without merit. The record shows that the parties had for a long time developed the practice of making and accepting such payments at irregular intervalsusually at the request of Mrs. Evans, who preferred that royalties be allowed to accumulate until they reached a meaningful amount rather than receive small monthly royalties. Our jurisprudence is well established to the effect that where a lessor indulges his lessee by customarily accepting late rental payment without demanding punctuality, strict enforceability is deemed waived. Under such circumstances, to hold the lessee to strict compliance, lessor must give advance notice of intent to strictly enforce the lease terms. Himbola Manor Apartments v. Allen, 315 So.2d 790 (La. App. 3rd Cir. 1975); Jones v. Paul, 254 So.2d 915 (La.App. 1st Cir. 1971). No such notice was given in this instance. On the contrary, the record reflects Lessors' repeated acquiescence in the irregular payments.
Mrs. Evans' claim for past due wages is the sole remaining issue. The counter-letter establishes her employment to handle sales and the record shows she did so for a time. Mrs. Evans contends she was replaced shortly after production began. We find as a matter of fact that Mrs. Evans acquiesced in her replacement. Her failure to challenge the loss of the job for several years indicates that she did not object. However, since the agreement between the parties has been reinstated, the terms of the counter-letter are also effective. Mrs. Evans should, therefore, be permitted to resume her position and should be compensated in accordance with the terms of the counter-letter.
It is ordered, adjudged and decreed that: (1) the judgment annulling the lease is reversed and set aside and judgment rendered herein in favor of Labarama, Inc., and against Lessors and Intervenors declaring subject lease in full force and effect with respect to the following described property:
40 acres of land in Section 18, Township 5 South, Range 8 East, bounded North by Bennett, East by Cate, South by Lanier, West by Dunnington, being the same property acquired COB 21, page 322 and COB 35, page 754, records of Tangipahoa Parish, Louisiana, and also described as the Southeast Quarter of the Southeast Quarter of said Section 18, Township 5 South, Range 8 East in the Parish of Tangipahoa, State of Louisiana.
The Northeast Quarter of the Northeast Quarter of Section 19, Township 5 South, Range 8 East in the Parish of Tangipahoa, State of Louisiana.
The East Half of the Northwest Quarter of the Southeast Quarter containing twenty acres, being in Section Eighteen (18), Township Five (5) South, Range Eight (8) East, and the Northeast Quarter of the Southeast Quarter of Section Eighteen (18), Township Five (5) South, Range Eight (8) East known as the Learner Place.
The North Half of Headright Number Forty-Three (43), Township Five (5) South, Range Seven (7) East, Greensburg Land District comprising 131.68, less one (1) acres for cemetery in the Parish of Tangipahoa, State of Louisiana;
*1292 (2) the judgment of the trial court rejecting the demands of Lessee and Lessors for damages is affirmed; (3) the judgment rejecting the claim of Mrs. Frances Tycer Evans for alleged unpaid wages is affirmed; (4) the judgment rejecting the demands of Mrs. Frances Tycer Evans for specific performance of her contract of employment by Labarama, Inc. is reversed and set aside and judgment rendered herein in favor of Mrs. Evans and against Labarama, Inc., ordering specific performance of said agreement; and that (6) all costs of these proceedings shall be paid one-half by plaintiffs, Quality Materials of Tangipahoa, Inc.; Mrs. Frances Tycer Evans and Miss Norma Tycer and one-half by Labarama, Inc.
Affirmed in part, reversed in part and rendered.