CHEHARDY, Judge.
This case, like the four cases which accompany it in this court, is an appeal by a lessor from the dismissal of its suit to evict a tenant for nonpayment of rent. We will discuss the companion appeals in this opinion, due to the similarity of facts and issues in all five cases.
The plaintiff-lessor in all five cases is the Housing Authority of St. John the Baptist Parish, which provides low-rent housing for eligible persons. The defendants, tenants of the Housing Authority’s housing project located in Edgard, Louisiana, are Suezane Shepherd (No. 83-CA-598 on the docket of this court), Barbara Borne (No. 83-CA-599), 0wanda Shepherd (No. 83-CA-600), Marion Feist (No. 83-CA-601) and Stephanie Bailey (No. 83-CA-622).
On March 17, 1983 the Housing Authority filed rules to evict the defendants, alleging each one’s lease had terminated from nonpayment of rent, that written notices to vacate had been delivered to the defendants more than five days prior to suit, but that the defendants had failed or refused to comply with the notice. The rules were heard on May 6, 1983, one after the other, by the same district court judge.
In each case, the court dismissed the Housing Authority’s suit, holding that the Authority had waived any right it had to evict for nonpayment of rent by acquiescing in prior consistent late payment by the tenants and failing to notify the tenants of its intent to begin strict enforcement of timely rent payment.
The evidence established that each tenant rents on a month-to-month basis under a written lease. Rental amounts are set according to each tenant’s ability to pay. *1234 Paragraph 2 of the lease provides that rent is payable in advance on the first day of each calendar month; further, a charge of $5.00 is to be made to the tenant’s account “when an amount over $25.00 is unpaid on the 6th of the month.” Paragraph 10 provides the lease may be terminated by the landlord at any time “for serious or repeated violation of any terms of this lease or for any other good cause.”
On March 8, 1983, each defendant had been given written notice to vacate her apartment for nonpayment of the March 1983 rent. After receiving the notice, each defendant tendered the rent to the executive director of the Housing Authority, Mrs. Ethel Segue, who refused to take it. None of the defendants vacated her apartment, and accordingly suit was filed on March 17.
The evidence established that defendant Owanda Shepherd is on welfare, and receives her check on the 16th of the month. Her rent is $29 a month. She testified she had been paying her rent after she got her check for several months before March 1983, “since last year * * * half of last year.” She said that when she tried to pay the rent on March 9, after receiving the eviction notice, Mrs. Segue refused to accept it. She stated she did not try to pay the April rent because Mrs. Segue had refused the March rent. (Mrs. Segue, on the other hand, testified she had had no contact with Owanda Shepherd since the eviction notice was tacked on the defendant’s door.)
Barbara Borne testified her rent is $129 per month. She said she had not paid her rent for March because Mrs. Segue refused it. She sent Mrs. Segue a check for the March rent on March 11, but that check was returned to her by one of Mrs. Segue’s employees, who told her Mrs. Segue was not going to take it. She had also tried to pay the April rent, but that check was refused by Mrs. Segue. Ms. Borne stated she is employed at a hospital, and gets paid every other week, but it does not always fall on the date the rent is due. She indicated she has often offered her rent after the sixth of the month and had it received.
Marion Feist was the only defendant represented by counsel. She testified she is employed by the St. John School Board and is paid monthly, on the 20th of the month. Her rent is $175 a month. She said she had been paying her rent after she received her monthly paycheck since June of the preceding year, because she gets paid once a month and the rent had increased. Prior to March 1983, the rent money orders she sent had never been returned to her. It was only in March, she said, that it was rejected. She has lived in the project for 14 years, and has never missed a month’s rent.
Mrs. Segue testified she received Mrs. Feist’s March rent payment, a money order dated March 18, on March 21. She photocopied it and returned it to Mrs. Feist the same day. Since then, she had received a certified letter from Mrs. Feist, which Mrs. Segue refused to accept. (Mrs. Feist testified this was an attempt to pay her April rent.) On cross-examination, Mrs. Segue admitted that the lease provided for a five-dollar late charge for overdue rent, which her agency had never tried to collect. She also admitted there was no provision in the lease that stated that tenants would automatically be evicted if payment is not received before the sixth day of the month.
She stated Mrs. Feist consistently paid her rent late. She said Mrs. Feist, and all other tenants, had been notified on July 25, 1980 that all tenants would be required to pay their rent timely. She admitted, however, that not every tenant paid timely, despite the 1980 notice.
Suezane Shepherd testified her rent for March, which she sent in on March 9, was refused. She made out a money order for the April rent, but did not send it because they had returned the March rent. She said she has lived in the project for five years, has three children, no husband, and her only support is welfare. Her rent is $23 a month. Her check comes on the 15th or 16th of the month.
Mrs. Segue admitted that she had accepted late rent payments from Ms. Shepherd *1235 during the five years the latter had lived in the project.
Stephanie Bailey testified she has lived in the project for over two years. She is on welfare, and receives her check on the 16th of the month. Her rent is $10 a month. She testified she sent her check to the Housing Authority office in La Place on March 16 by a friend, but they sent the check back to her. She stated she went in person to see “her” (meaning Mrs. Segue) and asked her if she was going to take her rent. Ms. Bailey said Mrs. Segue refused. Ms. Bailey testified that during most of the previous two years, she had tried to pay her rent before the sixth of the month; eventually, however, she had found herself unable to do so, and had been paying after the grace period. She stated she had not attempted to pay the April and May rents because Mrs. Segue had refused the March rent.
Mrs. Segue denied that Ms. Bailey had ever come to see her, or had tendered the rent for March. She did not deny that she had previously allowed Ms. Bailey to pay her rent after the sixth of the month. She stated, “I’m saying that Miss Bailey is one of those that is chronically delinquent in paying her rent.”
On appeal, the Housing Authority argues the trial court erred in failing to evict the defendants, because the evidence established all paid their March rent, if at all, after the five-day grace period had expired, and these payments were not accepted by the plaintiff. Further, the Authority argues, it is entitled to evict the defendants because the April and May 1983 rents either were not tendered or were not tendered timely. The Housing Authority contends the evidence is insufficient to establish any consistent pattern of accepting late rent payments from the defendants individually, such as to establish a waiver by the plaintiff of its rights to demand timely payment. Finally, the plaintiff contends the trial judge erred by acting as an advocate on behalf of the unrepresented defendants, in effect presenting a defense for them which they did not present themselves.
We find merit to none of these arguments. The evidence, whether taken as a whole or case-by-case establishes that the Housing Authority had a pattern of allowing its tenants to pay their rent late; that the written warnings to tenants to pay their rent on time obviously had not been enforced; and that the tenants had no notice in March 1983 that the Authority intended to begin strict enforcement of timely rent payments. Further, the defendants cannot be faulted for nonpayment of their April and May rents, when the plaintiff had refused to accept their March payments. Clearly, tender of the April and May payments would have been fruitless.
Cancellation of leases is not favored in Louisiana law; a lease will be dissolved only when it has been shown that the lessor is undoubtedly entitled to such a cancellation. Atkinson v. Richeson, 393 So.2d 801 (La.App. 2 Cir.1981). The right to dissolve a lease is subject to judicial control according to the circumstances of each case. Hebert v. Brasseaux, 399 So.2d 778 (La.App. 3 Cir.1981). State courts, on the basis of equity, are vested with discretion under some circumstances to decline to grant a lessor cancellation of a lease, although such a right appears to be otherwise available to him. Hebert v. Brasseaux, supra; Housing Auth. of City of Lake Charles v. Minor, 355 So.2d 271 (La.App. 3 Cir.1977), writ denied 355 So.2d 1323.
Where a lessor customarily accepts rental payments after the date on which they are due, such “custom” by acquiescence of the parties has the effect of altering the original contract with respect to punctuality of rent payments. Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3 Cir.1975). In such cases, the landlord’s right to strict enforceability of the lease rental provisions is considered to have been waived; in order to hold the lessee to the explicit terms of the lease thereafter, the lessor must give advance *1236 notice of his intention to enforce the lease strictly in the future. Himbola Manor Apartments v. Allen, supra.
“The basis for such a rule seems to be the prevention of a lessor-owner ‘misleading or lulling a tenant into a false sense of security' by accepting late rent payments for an extended period, without demand for punctuality, and then at a future date of his own choosing cancel the lease once payment becomes overdue. [Citations omitted.]” Himbola Manor Apartments v. Allen, supra, at 793.
Nor do we find merit to the Housing Authority’s contention that the trial judge acted as an advocate for the defendants and conducted their defense. As stated above, four of the defendants were without legal counsel during the proceedings. Generally, a trial judge, in order to maintain the impartiality which proper trial technique demands, should be careful not only as to the number and type of questions propounded by him to the witnesses but also as to the manner in which they are propounded. La Pierre v. Gibson, 420 So.2d 990 (La.App. 4 Cir.1982). The trial judge is within the scope of his duty when he asks questions from the bench in order to adjudicate the matter fairly. Patin v. DeStevens, 415 So.2d 1011 (La.App. 4 Cir.1982). Our review of the record here does not indicate any abuse of discretion by the district judge; his questions were an attempt to clarify the evidence and to aid in conduct of the trial.
For the foregoing reasons, the judgment of the district court is affirmed. All costs are to be paid by appellant.
AFFIRMED.