408 So.2d 978 (1981)
INVESTOR INNS, INC., Plaintiff-Appellee,
v.
Melvin J. WALLACE, d/b/a El Pollino Mexican Food Restaurants, Defendant-Appellant.
No. 14728.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*979 Goff & Goff by A. K. Goff, Jr., Ruston, for defendant-appellant.
Grant, Scott, Dean & Kneipp by Donald L. Kneipp, Monroe, for plaintiff-appellee.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
PRICE, Judge.
Defendant, a non-resident, appeals a judgment evicting him from certain leased premises for failure to timely pay rent. We affirm.
On December 12, 1974, defendant, Melvin J. Wallace, entered into a contract for the lease of restaurant facilities owned by plaintiff-corporation, Investor Inns, Inc., whose sole stockholder is Joe Bailey Grant. This lease, for a primary term of five years, was ultimately extended for an additional eight years pursuant to the provisions of the original agreement.
Under the terms of the lease, rental payments were to be calculated as a fixed percentage of the monthly gross receipts from the restaurant business. Rent was due and payable by the 20th day of each succeeding month. The agreement also contained the following provision regarding payment of rent:
... [I]f lessee should default in the payment of any two (2) consecutive installments of rent, Lessor may at its option declare all remaining installments of rent due and exigible and bring suit to enforce collection thereof or may demand the cancellation of this lease and of all rights and obligations of the parties hereunder.
During the course of the lease, defendant was frequently late in meeting his monthly rental obligations. On several occasions checks tendered by defendant for payment of rent were returned unpaid because of a lack of sufficient funds. However, at no time did defendant fail to pay two consecutive months rent within the time frame provided until the incident which precipitated this proceeding.
The December 1980 rent, due by January 20, 1981, was not timely paid by defendant. Sometime in early February 1981, plaintiff received a check drawn on a Texas bank for $5,695.55 which purported to be payment for the December 1980 rent. On February 20, 1981, the due date for January's rent, *980 Joe Bailey Grant flew to Texas and personally presented the December 1980 rent check to the bank for payment. Payment was refused because of insufficient funds to cover the obligation. At this point, defendant had failed to timely pay two consecutive months rent, thereby activating lessor's option to cancel the lease.
A five-day notice to vacate the leased premises was mailed to defendant on February 23, 1981, which was received February 25, 1981. Plaintiff filed this eviction proceeding on February 24, 1981, alleging that since defendant had defaulted in payment of two consecutive rent installments, plaintiff was entitled to cancellation of the lease agreement. Personal jurisdiction over the non-resident defendant was obtained by use of the long arm statute (La. R.S. 13:3201 et seq.). Accordingly, certified copies of the citation and rule were served on defendant by certified mail.
On March 5, 1981, defendant filed an exception to the use of the long arm statute in a summary proceeding. Subsequently, defendant filed an exception of no cause of action and plea of prematurity, contending that any breach of the lease was passive, requiring a prior putting in default before institution of suit. Defendant also answered plaintiff's suit and plead two affirmative defenses:
(1) compensation or set-off which allegedly occurred because of amounts owed by plaintiff to defendant in excess of the rent owed; and
(2) customary acquiescence by plaintiff in accepting late rental payments without complaint which has allegedly altered the lease provisions pertaining to collection of rent.
After argument the exceptions of improper use of summary procedure and no cause of action were overruled. The plea of prematurity was referred to the merits.
Thereafter, on April 23, 1981, the rule for eviction was heard. At the conclusion of the trial of the rule, judgment was granted in favor of the plaintiff. The trial court found there had been no acquiescence in acceptance of late rental payments because under the terms of the lease, plaintiff was forced to accept all late rental payments unless defendant was overdue with two consecutive months rent. The court further found defendant had taken advantage of this situation in the past and often attempted to pay rent with insufficient checks which were paid before the next rental installment came due. The trial court rejected the claim of compensation since defendant failed to prove that all of his claims were liquidated, which is a prerequisite for a plea of compensation.
The court also noted that plaintiff had failed to comply with La.C.C.P. Art. 4701, which requires a five-day notice to vacate before institution of eviction proceedings. However, since defendant did not raise lack of proper notice as a defense, the court deemed this requirement waived.
On appeal, the following issues are raised:
(1) Was it permissible to use the long arm statute to gain personal jurisdiction over a non-resident in this summary eviction proceeding?
(2) Did defendant effectively waive the notice requirement provided for by La.C.C.P. Art. 4701?
(3) Under this particular lease agreement, is the non-payment of rent a passive breach which requires a putting in default before institution of suit?
(4) Was the trial court correct in denying defendant's claim of compensation or set off?
(5) Was a custom of accepting late rental payments by plaintiff proved?
(6) Should the trial court have exercised judicial control and have found the lease could not be dissolved for untimely payment of rent?
USE OF LONG ARM STATUTE
Citing this court's decision in Clay v. Clay, 369 So.2d 1199 (La.App.2d Cir. 1979), defendant contends the long arm statute cannot be used to gain personal jurisdiction over a non-resident in an eviction proceeding.
*981 In Clay, plaintiffs sought a writ of quo warranto directing a non-resident defendant to show by what authority he held certain corporate offices in a Louisiana corporation. Defendant received certified copies of the pleadings on August 3, 1978. The writ was made returnable on August 9, 1978. Prior to the hearing on the writ, defendant excepted to the jurisdiction of the court, contending the long arm statute was not applicable in summary proceedings, and that he received no citation as required by the statute. The trial court overruled the exception and the quo warranto proceedings were heard on August 9.
In reversing the trial court and sustaining defendant's exception, this court found that the long arm statute was not intended to be used to assert jurisdiction over non-residents in summary proceedings in instances where the defendant is ordered to appear in less than 10 days. The decision should be interpreted to limit the availability of the long arm statute in summary proceedings only when the non-resident is not afforded the same delays he would be entitled to in ordinary proceedings.
The Supreme Court in Clay v. Clay, 389 So.2d 31 (La.1979) sustained defendant's exception to jurisdiction for reasons closely akin to those set out by this court. The Supreme Court held that personal jurisdiction did not attach over the defendant because the service of process did not comport with the service provisions of the long arm statute (La.R.S. 13:3204). The instrument mailed to the defendant did not include a citation, but rather consisted solely of certified copies of the pleadings. The court did not hold the statute could not be used under any circumstances in the summary proceeding.
In the instant case, defendant received certified copies of the citation and rule on February 26, 1981. The citation clearly shows that defendant had 30 days in which to file an answer. Although the rule was originally set for trial within that 30-day period, the trial of the rule was not actually held until April 23, 1981. Defendant was afforded a delay of almost two months to prepare his defenses to this eviction proceeding and was clearly provided due process of the law. Therefore, we hold that use of the long arm statute to gain personal jurisdiction over the defendant was permissible.
NOTICE TO VACATE
On appeal, defendant for the first time raises lack of proper notice as a defense to this eviction proceeding. Defendant cites well established jurisprudence to the effect that abrogation of leases is not encouraged in Louisiana, and such a remedy is to be granted only when the right thereto is clear beyond a doubt of both fact and law. Defendant contends notice to vacate is a prerequisite to eviction proceedings. He further argues that since such notice was not received until after institution of suit, plaintiff's right to dissolution of the lease was not clear beyond a doubt and should not have been granted.
While La. C.C.P. Art. 4701[1] clearly contemplates a five-day notice to vacate before filing of suit, we are of the opinion this notice may be waived by a party's failure to timely raise the issue. In Wrenn v. Miller, 161 So. 882 (La.App.2d Cir. 1935), this court was faced with the same problem under Act No. 55 of 1926, a precursor of the present codal articles dealing with eviction procedure.
Basically, the act provided that the owner:

*982 ... Shall give to the tenant a notice in writing to vacate, ten days before the expiration of the month, if the same be a monthly lease, or thirty days before the expiration of the said lease, if the said lease be in writing, and for a term of one or more years or otherwise, other than by the month.
And if the tenant shall refuse to comply with the said notice, after the expiration of such delay, to remove from the said premises, it shall be lawful for such lessor to cause the tenant to be cited summarily to show cause within two days after service of such rule, to appear before any court having competent jurisdiction, in order to be there condemned to deliver him the possession of the leased premises.
This court, in finding notice to vacate can be waived, made the following statement:
... [N]otice to vacate is a necessary preliminary step in an ejectment proceeding under the act, and that the failure to give the notice, if advanced by a plea of prematurity or in defense on the merits, would work a dismissal and delay in the proceeding. But if defendant, after citation, appears and defends on the merits without objection, the failure to give this notice is waived and cannot be urged....
In line with our prior decision, we find defendant effectively waived lack of proper notice as a defense when he failed to raise it at the trial level.
PUTTING IN DEFAULT
Defendant contends that nonpayment of rent is a passive breach of the lease agreement which requires a prior "putting in default"[2] before institution of suit. In support of this position, defendant cites several cases, including Inabnett v. Pruett, 229 So.2d 150 (La.App.2d Cir. 1969), where the courts have held that failure to perform as agreed upon under a contract of lease is a passive breach of the agreement.
Contracts legally entered into have the force of law among the parties who have formed them. La. C.C. Art. 1901. The contract may provide that a party who fails to comply with the terms of the agreement shall be deemed to be in default by the mere act of his failure. La. C.C. Art. 1911. After careful study of this lease agreement, we conclude it was not necessary for plaintiff to place defendant in default before instituting this eviction proceeding.
The lease clearly shows that rental payments were due and payable by the 20th day of the month. Upon the failure to pay two consecutive installments when due, the lease unequivocally granted plaintiff the option of either declaring all remaining installments due and exigible or seeking cancellation of the lease. Under the very terms of this agreement, defendant's failure to pay rent for two months triggered plaintiff's right to institute eviction proceedings. Therefore, we hold it was not necessary for plaintiff to put defendant in default before filing this action.
COMPENSATION
Defendant alleges this eviction proceeding is improper because at the time of suit plaintiff was indebted to defendant in an amount larger than plaintiff's claim for rent. Defendant argues that by operation of law, a compensation or set off occurred, thereby extinguishing plaintiff's claim for rent.
At trial, over plaintiff's opposition, defendant attempted to prove that plaintiff was indebted to him for the following:
(1) the cost of meals eaten at the restaurant by Joe Bailey Grant and his family for which no payment was ever received;
(2) costs incurred by defendant in securing ice for the operation of his business when the ice machine supplied by plaintiff failed to operate properly; and
(3) overpayment of rent by defendant for a period of four months.
*983 To be applicable, compensation or set off[3] requires the contemporaneous existence of distinct, liquidated, and equally demandable debts. Carter v. Morse, 8 Mart.O.S. 398 (La.1820); Saunier v. Saunier, 217 La. 607, 47 So.2d 19 (1950); Hartley v. Hartley, 349 So.2d 1258 (La.1977).
A determination of the liquidity of a debt is an essential prerequisite to deciding whether the claim is a proper basis for a plea of compensation. Lack of sufficient liquidity and demandability will preclude such a plea. Hartley v. Hartley, supra.
In the instant case, the trial court found defendant was only able to prove a debt of $169 for unpaid meals. The court ruled that any other claim was conjectural and unsubstantiated by the evidence. After a review of the record, we find the trial court to be correct in its determination. Compensation is therefore not available in these proceedings to offset the debt owed by defendant for unpaid rent.
"CUSTOM" OF LATE PAYMENTSJUDICIAL CONTROL
Defendant contends plaintiff's past conduct in not insisting upon timely rental payments has created a custom which has effectively altered the lease agreement, lulling defendant into a false sense of security concerning such payments. Defendant further contends the evidence reveals a "scheme" on the part of plaintiff to cancel the lease. He alleges that if plaintiff had presented the rent check for payment through normal banking channels, plaintiff would have received payment for the December rent. Finally, defendant contends the facts and circumstances presented justify the court taking "judicial control" of this proceeding and denying cancellation of the lease.
Over the course of years, plaintiff has accepted many late payments from defendant. Plaintiff was concerned about these late payments and often inquired about his rent. Defendant, aware of the lease provision requiring two months default in rent, sometimes tendered rent checks which he knew were not covered by sufficient funds. Defendant chose instead to rely upon a system whereby he or an employee would call the bank each day to determine which checks had been presented for payment. At that time, a decision would be made to either "cover" a check or let it be returned unpaid.
Where a lessor has customarily accepted late rental payments, such "custom" has the effect of altering the original contract in respect to punctuality of rent payments. When such "custom" has been created, the lessor may not strictly enforce the lease rental provision unless he has given the lessee advance notice of his intention to collect the rent when due. Standard Brewing Co. v. Anderson, 121 La. 935, 46 So. 926 (1908); Briede v. Babst, 131 La. 159, 59 So. 106 (1912); Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App.3d Cir. 1975).
The reasoning behind such a rule is the prevention of a lessor from "misleading or lulling a tenant into a false sense of security" by accepting late payments over a long period, and then cancelling the lease at a future date of his own choosing once payment becomes overdue. Himbola Manor Apartments v. Allen, supra.
However, where the lessor has made frequent demands for payment or where acceptance of late payments occurs *984 because of "unwilling and forced" indulgence on the lessor's part, the foregoing rules do not apply. Briede v. Babst, supra; Redon v. Armstrong, 215 La. 307, 40 So.2d 474 (1949); Wall v. Green, 228 La. 59, 81 So.2d 769 (1955); Himbola Manor Apartments v. Allen, supra.
Under the terms of this particular lease, plaintiff had no recourse but to accept late payment of rent until defendant failed to timely pay two consecutive installments. Furthermore, plaintiff often made inquiries about this rent. The record also reflects that defendant was well aware plaintiff had no choice but to accept these late payments. Under these circumstances, acceptance of tardy payments by plaintiff was an "unwilling and forced" indulgence which could not have "lulled" defendant into a "false sense of security." Therefore, we find that defendant has failed to prove a "custom" of late rental payments.
Although a lessor may ordinarily dissolve a lease for failure of the lessee to pay rentals timely, this right is subject to judicial control according to the circumstances. Brewer v. Forest Gravel Co., Inc., 172 La. 828, 135 So. 372 (1931); Atkinson v. Richeson, 393 So.2d 801 (La.App.2d Cir. 1981).
In the instant case, defendant often attempted to satisfy his rental obligations with checks that were not covered by sufficient funds. Indeed, the record reflects that defendant's employee knew there were insufficient funds to pay the December rent check when it was issued. We do not find any "scheme" by plaintiff to cancel the lease based upon his personal presentment of the December rent check for payment. Defendant chose the method in which he would satisfy his obligations. He was at risk that plaintiff would seek payment upon the instrument in any legal fashion. That plaintiff chose to fly to Texas to seek payment is of no legal significance. We find the circumstances presented do not warrant judicial control of this eviction proceeding.
For the reasons assigned, the judgment of the trial court is affirmed at defendant's costs.
NOTES
[1] La. C.C.P. Art. 4701. Termination of lease; notice to vacate

When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, non-payment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this article. If the lease has a definite term, notice to vacate may be given not more than thirty days before the expiration of the term.
[2] See La.Civil Code Articles 1931 et seq.
[3] 2. The concept of compensation or set-off is treated by La. Civ. Code, Arts. 2207-09, which provide as follows:

Art. 2207. When two persons are indebted to each other, there takes place between them a compensation that extinguishes both the debts, in the manner and cases hereafter expressed.
Art. 2208. Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums.
Art. 2209. Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and same kind, and which are equally liquidated and demandable.
The days of grace are no obstacle to the compensation.