HALL, Chief Judge.
The Housing Authority of the Town of Lake Providence, plaintiff, filed a rule to show cause why a judgment of eviction should not be entered against tenants-defendants, Valerie Allen and A.C. Allen. After a hearing, the district court entered a judgment of eviction. The Allens suspen-sively appealed the eviction judgment. For the reasons expressed in this opinion, we reverse and render judgment dismissing the eviction suit.
The Housing Authority of the Town of Lake Providence provides low rent housing to eligible persons in the Lake Providence area pursuant to regulations of the United States Department of Housing and Urban Development (HUD). The Allens have been tenants of the Housing Authority since July of 1983.
In accordance with HUD regulations and the Housing Authority lease agreement, the Allens’ rent was periodically adjusted according to their income. From July, 1983 through November, 1983 no rental payment was required. From December, 1983 through December, 1984 the Allens were required to pay $18.00 per month rent. During this rental period, the Allens paid the monthly rental at widely varying times of each month and appear to have been consistently late. On January 1, 1985, a new rental agreement was signed requiring the Allens to pay $87.00 per month. The rental payments under the new lease were consistently paid late.
The new lease agreement on January 1, 1985 specified that each month’s rent of $87.00 was payable in advance on the first day of each calendar month. However, that portion of the lease providing penalties for late payment was specifically crossed out. The lease also provided that there shall be rent redeterminations once a year or whenever there is a change in family income or family composition.
Carol Thomas, Director of the Housing Authority of the Town of Lake Providence, testified that in March of 1985 the Housing Authority sent the Allens an eviction notice for nonpayment of rent. However, this dispute was resolved when the Housing Authority allowed the Allens to catch up on their rent by making a payment on April 29, 1985 of $178.00, plus an additional $50.00 attorney’s fee, at which time the Allens became current in payment of their rent.
In February of 1985, Mr. Allen had begun working for Sullivan Enterprises as a carpenter; however, this employment was only temporary. Due to an increase in Mr. Allen’s income, the Housing Authority recalculated the Allens’ rent to $261.00 per month to begin on May 1, 1985. After the Allens failed to pay the May rental on the first day of the month, the Housing Authority sent the Allens an eviction notice for nonpayment of rent on May 7th, seven days after the rent became due. After receiving the notice, Valerie Allen and her attorney, Margaret Hunter, met with the Director of the Housing Authority, Carol Thomas. The method of recalculating the rent was discussed. The recalculation matter was not resolved, but an agreement was reached at the meeting whereby the Allens could make a partial payment of $50.00 on the following Friday to avoid the eviction. However, this agreement fell through. Whether the Allens attempted to make the payment and whether payment was refused by the Housing Authority were contested factual issues at trial, and *1066 will be discussed more fully subsequently in this opinion.
On July 2, 1985, the Housing Authority began summary proceedings to have the Allens evicted from the apartment. Pursuant to the Housing Authority’s rule to show cause, the district court, on July 9, 1985, entered judgment of eviction in favor of the Housing Authority. This judgment was set aside upon a finding that the Al-lens had not received proper notice of the rule to show cause. The district court granted the Allens a new trial which was held on August 1, 1985, after which the court again entered a judgment of eviction in favor of the Housing Authority.
The trial court found that had there been a $50.00 payment by the following Friday to the Housing Authority pursuant to the agreement after the notice of eviction, the Housing Authority would have been bound by their agreement to attempt to resolve the matter in an amiable manner. However, the court found that the Housing Authority had not refused or received the $50.00 payment on the following Friday. Therefore, the court entered the order of eviction.
On appeal, the defendants contend that the district court erred in failing to dismiss the eviction proceedings on the basis that the Housing Authority: (1) established a custom of accepting late payments; (2) agreed to accept a partial late payment after the eviction proceeding was instituted on May 7, 1985; (3) refused to consider defendants’ grievance concerning the recalculation of rent; (4) denied the defendants’ due process of law in the eviction proceedings; and (5) failed to proceed under a valid lease agreement.
We first consider whether the Housing Authority had established a custom of accepting late payments, whether the Allens attempted to make a partial late payment after the eviction notice was given on May 7, 1985 pursuant to their agreement with the Housing Authority, and the effect of these circumstances on the Housing Authority’s eviction action.
Where a lessor customarily accepts rental payments after the date on which they are due, such “custom” by acquiescence of the parties has the effect of altering the original contract with respect to punctuality of rent payments. In such cases, the landlord’s right to strict enforceability of the lease rental provisions is considered to have been waived; in order to hold the lessee to the explicit terms of the lease thereafter, the lessor must give advance notice of his intentions to enforce the lease strictly in the future. Housing Authority of St. John v. Shepherd, 447 So.2d 1232 (La.App. 5th Cir.1984); Investor Inns, Inc. v. Wallace, 408 So.2d 978 (La.App. 2d Cir.1981); Himbola Manor Apartments v. Allen, 315 So.2d 790 (La.App. 3d Cir.1975).
The reasoning behind such a rule is the prevention of a lessor from “misleading or lulling a tenant into a false sense of security” by accepting late payments over a long period, then cancelling the lease at a future date of his own choosing once payment becomes overdue. Himbola Manor Apartments v. Allen, supra.
However, where the lessor has made frequent demands for payment or where acceptance of late payment occurs because of “unwilling and forced” indulgence on the lessor’s part, the foregoing rules'do not apply. Investor Inds, Inc. v. Wallace, supra; Briede v. Babst, 131 La. 159, 59 So. 106 (1912); Redon v. Armstrong, 215 La. 307, 40 So.2d 474 (1949).
Additionally, when a rental payment is accepted after notice to vacate has been given, the notice is vitiated and the tenant’s possession is maintained. The right of summary eviction is not then available to the lessor. Ernst Food Mart, Inc. v. Jackson-Atlantic, 405 So.2d 1272 (La.App. 4th Cir.1981); Flores v. Gondolier, Ltd., 375 So.2d 400 (La.App. 3d Cir.1979); Murphy Oil Corp. v. Gonzales, 316 So.2d 175 (La.App. 4th Cir.1975).
The Housing Authority contends that the acceptance of late payments was unwilling and forced indulgence on the Housing Authority’s part. Additionally, *1067 the Housing Authority contends that the Allens breached the agreement whereby the Housing Authority would accept a partial late payment after the May eviction by failing to make the $50.00 payment by the following Friday.
The Housing Authority’s “tenants ledger” shows that the Allens have consistently made their rental payments late in the two years which they have been tenants. The ledger also demonstrates that the Housing Authority customarily accepted these late payments. There is no testimony in the record indicating that the Housing Authority ever gave notice to the Allens that they would no longer accept late payments. The only such notice which the Housing Authority might arguably have given is the March, 1985 eviction notice. However, that eviction process was soon dropped after the Housing Authority again accepted a late payment by the Allens. There is no indication that the Allens were told at that time that late payments would no longer be accepted.
The record reflects that the Housing Authority required the Allens to pay $178.00 in back rent on April 29, 1985 plus an additional $50.00 attorney fee. At the same time, the Housing Authority had, effective May 1, 1985, increased the Allens’ rent from $87.00 per month to $261.00 per month pursuant to a recalculation of Mr. Allens’ income. Shortly after accepting the late payment and dramatically increasing the Allens’ rent, the Housing Authority again sought to evict the Allens for nonpayment of rent only seven days past due. The Housing Authority established a record of accepting late payments for two years. In the lease agreement penalties for late payments were specifically crossed out. This evidence demonstrates that the Housing Authority led the Allens into a false sense of security by customarily accepting late rental payments. Accordingly, the Housing Authority did not have the right to cancel the lease and give an eviction notice seven days after the rent became due without having given prior notice of an intent to strictly enforce the terms of the lease.
The record also supports the Allens’ contention that the eviction notice was vitiated by an agreement to accept a partial late payment. Both Mrs. Allen and her father testified that they attempted to make the partial payment of $50.00 to the clerk at the Housing Authority office on the following Friday in accordance with the agreement. However, the clerk refused to accept the payment because an eviction proceeding had been instituted against the Allens. The clerk told them that they would have to talk to either Carol Thomas or her secretary, Bonnie. Both Mrs. Allen and her father asked to see Carol Thomas,. Director of the Housing Authority, but were told that they were not there and would not be in until Monday. Mrs. Allen testified there were other later attempts to make payment but that payment was refused.
The clerk at the Housing Authority office did not testify. However, Ms. Thomas did testify that it was normal procedure for the office to refuse to accept rental payments after eviction proceedings had been instituted. Ms. Thomas testified that to her knowledge no attempt was made by the Allens to make the $50.00 payment on the following Friday and that after that date it was her position and instructions to the clerk to refuse to accept any payments from the Allens.
The preponderance of the evidence reflects that the clerk at the Housing Authority office had instructions to refuse to accept payments from persons who had received eviction notices. The testimony of Ms. Allen and her father is not directly contradicted in the record by either the clerk who worked on that following Friday or by Ms. Thomas who could only say that she worked regular hours unless she was out on Housing Authority business. The Housing Authority’s refusal to accept the agreed payment either on the following Friday or thereafter was a breach of the amicable agreement between the Allens and the Housing Authority. We find that a settlement was reached which vitiated the Housing Authority’s right to proceed with the eviction of the Allens.
*1068 Having determined that the right to summary eviction was not available to the plaintiff based on the May 7, 1985 eviction notice because of the established custom of accepting late payments and because of the agreement to accept a partial late payment after the eviction notice was issued, it is not necessary to discuss at length defendants’ additional assignments of error. However, we note that the defendants’ assertion that the Housing Authority failed to proceed under a valid lease agreement is without a basis in the record. The lease agreement which the Allens signed on January 1, 1985 clearly covered the term between January 1, 1985 and December 31, 1985 and clearly allowed for redetermina-tions of rent each year or whenever there is a change in family income. Whether or not the Housing Authority properly calculated the rent is an issue which was not considered by the district court and there is an inadequate basis in the record for this court to determine whether the recalculation was proper.
The judgment of eviction is reversed and the eviction proceeding against the defendants is dismissed, at the cost of the Housing Authority, including the costs of this appeal.
REVERSED AND DISMISSED.