Judgment rendered April 14, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,591-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

FORT MIRO SUBDIVISON                    Plaintiff-Appellee
PARTNERSHIP D/B/A FORT
MIRO

versus

CARY GIX                                Defendant-Appellant

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019E03965

Honorable Jefferson Bryan Joyce, Judge

* * * * *

CARY GIX                                In Proper Person,
                                        Appellant


CHRISTOPH BAJEWSKI                       Counsel for Appellee



* * * * *

Before STONE, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

In this appeal of a judgment granting eviction, the appellant asserts she timely tendered rent, including the late fee established in the lease agreement, but that the property owner refused to accept the payment tendered and improperly demanded payment of attorney fees and court costs, which had not yet been incurred and were not due. When the appellant refused to pay the additional fees associated with an eviction proceeding that had not yet been instituted, the appellee refused to accept all offers for payment of rent and, instead, eventually instituted an eviction action. The court below granted the eviction. As the appellant acted in accordance with the lease agreement and related documents, and finding that the notice of eviction was improper, the judgment granting the eviction was manifestly erroneous, and we hereby reverse.

**FACTS & PROCEDURAL HISTORY**

Cary Gix ("Gix") and her two minor children received the benefits of participation in a housing supplement program administered by the Monroe Housing Authority/Public Housing Agency ("Housing Agency"), managed by Housing and Urban Development ("HUD"), and commonly referred to as the "Section 8 Housing Program." As a qualified participant, Gix was responsible for a portion of the monthly rent and the Housing Agency, in accordance with guidelines promulgated in connection with the Section 8 Housing Program, would also pay a portion of the rent at a qualifying housing facility. Ft. Miro Subdivision Partnership D/B/A Fort Miro ("Ft. Miro") qualifies under the program as such a housing facility and receives a portion of Gix's monthly rent directly from the Housing Agency.

In September of 2019, Gix was delinquent with her portion of the monthly rental payment. The existing lease between Gix and Ft. Miro in effect at the time was expiring at the end of September, and a new lease, effective October 1, 2019, provided for a prospective reduced amount of the future rental payments for which Gix would be responsible. It is not clear from the record if the total amount of rent to be received by Ft. Miro would remain the same in the new lease, or if that total amount was to be reduced as well, as there is only one page of the lease contained in the record.

Ft. Miro neither provided an eviction notice nor did it institute eviction proceedings against Gix in September. On October 2, 2019, Gix presented, in the form of money order, payment of the $496 she owed as her portion of the rent, plus the $50 late fee in full for September. Ft. Miro refused to accept the payment from Gix. It is not clear from the record what amount Ft. Miro accepted that month from the Housing Authority for the benefit of Gix, or, whether, as Gix asserts, the apartment failed inspection, which may have impacted the eligibility of Ft. Miro to receive those payments.

Ft. Miro steadfastly demanded that before it would accept September rent payment from Gix, she must pay an additional $215 fee for attorney fees and court costs for an eviction proceeding, a proceeding which Ft. Miro had neither instituted nor pursued at the time. When Gix attempted to pay rent for October, and again also tendered her September rent and late fee, Ft. Miro refused to accept it. Ft. Miro reasserted the same demand, that Gix was responsible for additional charges for attorney fees and court costs for an eviction proceeding, despite Ft. Miro failing to provide Gix with any

eviction notice for the delinquent September rent or instituting any proceedings to evict her at the time.

After refusing the September and October rental payments tendered by Gix, Ft. Miro forwarded written notice to her, dated October 6, 2019, to vacate the apartment. That notice, as did the lease, allowed for payment of the delinquent rent and a late fee to remain in the property. On October 16, 2019, Gix once again attempted to deliver to Ft. Miro the entirety of the rental payments for September and October, including late fees, and Ft. Miro refused to accept those payments, and advised it would not accept any payments from Gix and would proceed with having her evicted.

On October 21, 2019, Fort Miro filed a Rule for Eviction against Gix for non-payment of rent for October. The eviction citation was issued for Gix and served upon her on October 25, 2019, by tacking the notice to her door. The Rule for Eviction hearing was initially held on November 7, 2019, but Ft. Miro was not present, and the hearing was continued to November 18, 2019.

At the November 18, 2019, hearing, the lower court was not provided with a copy of either lease, but was presented with the Five Day Notice to Vacate only for non-payment of the October rent, demanding payment of the amount of $1,092.00 for October. Support for demanding that amount is not found in the record. The notice also included the following language: *"You also have 5 days in which to discuss the proposed termination of tenancy with the landlord."*

At the November 18, 2019 hearing, the trial court heard brief arguments from both Gix and Ft. Miro, and ultimately ruled to evict Gix for

3

non-payment, a decision the record indicates was based a series of events arising from the non-payment of September rent. The next day, Gix filed a motion for suspensive appeal, which was granted, and subsequently converted to a devolutive appeal. Gix and her two minor children were officially evicted and removed from the apartment on December 19, 2019.

**STANDARD OF REVIEW**

The standard of review for a judgment of eviction is clearly wrong/manifestly erroneous. *Housing Authority of New Orleans v. Haynes*, 14-1349 (La. App. 4 Cir. 5/13/15), 172 So. 3d 91, 99.

**DISCUSSION**

**Assignment of Error No. 1: The lower court erred in failing to allow Gix to introduce evidence at the eviction hearing.**

Gix asserts that the lower court erred when it did not allow her to introduce evidence at the eviction hearing. The transcript of the eviction hearing does not reflect that Gix attempted to offer and introduce items into evidence at the hearing, nor does it reflect any objections by Gix. "Failure to contemporaneously object constitutes a waiver of the right to complain on appeal." *Zellinger v. Amalgamated Clothing*, 28,127 (La. App. 2 Cir. 4/3/96), 683 So. 2d 726. Because Gix failed to attempt to introduce evidence into the record below, and to object to any disallowance of same by the lower court, we cannot say that the lower court erred on this point. This assignment of error lacks merit.

**Assignment of Error No. 2: The lower court erred in evicting Gix from her home.**

Testimony at the eviction hearing indicate the eviction efforts of Gix by Ft. Miro were initiated when Gix tendered delinquent rent for September

4

and October, 2019. Ft. Miro's actions of demanding from Gix an additional fee of $215, allegedly for attorney fees and court costs, triggered a series of insurmountable financial obstacles for Gix. These actions by Ft. Miro were contrary to its policy of accepting delinquent rental payments. Gix tendered the appropriate amount of September rent in accordance with the agreement with Ft. Miro, but Ft. Miro refused to accept it. Ft. Miro took a steadfast position, without notice to its tenant and which contradicted its written leases and delinquent payment notices, that it would not allow Gix to make a delinquent payment and that it intended to evict her.

*Insufficient and Ineffective Notice*:

If a landlord seeks to evict a tenant, as Ft. Miro did Gix, it must follow the provisions of the written lease between the parties. In the event there was no such agreement, the landlord must, at a minimum comply with La. C.C.P. art 4701, which provides *". . . the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee."* In the event the lessor accepts rental payment after the notice to vacate has been given, the notice is vitiated and the tenant's possession is maintained. The right to summary eviction is not then available to the lessor. *Hous. Auth. of Town of Lake Providence v. Allen*, 486 So. 2d 1064 (La. App. 2 Cir. 1986); *see also Ernst Food Mart, Inc. v. Jackson-Atlantic*, 406 So. 2d 1272 (La. App. 4 Cir. 1981); *Flores v. Gondolier, Ltd.*, 375 So. 2d 400 (La. App. 3 Cir. 1979); *Murphy Oil Corp. v. Gonzales*, 316 So. 2d 175 (La. App. 4 Cir. 1975).

It is clear that Gix was provided with inconsistent, contradictory, and confusing information from Ft. Miro in regards to its eviction proceeding

against her, and what amount she would be required to pay to remain in the residence. Contained in the record is only a Five Day Notice to Vacate for failure to pay rent for October 2019. Based on the only page of the October Lease, the total rental amount due would be $592, but as Gix was a participant in the Section 8 Housing Program, her portion of that rent would only be $332. The balance of the rent, in accordance with the agreement between Ft. Miro and the Housing Authority, would be paid directly from the Housing Authority. The Five Day Notice to Vacate ("Notice") for nonpayment of October 2019 rent demanded $1,092, as is reflected in the notice reproduced below:



**FIVE DAY NOTICE TO VACATE**
**FOR NON-PAYMENT OF RENT**
**Fort Miro**
PROPERTY NAME
**STATE OF LOUISIANA**

306 Daisy Street
Monroe, La 71201

TO: Cary Gix

209 Daisy Street
Unit Number/Address

You are hereby notified to vacate and deliver to me the premises, apartment number/address 209 Daisy Street five days from the service hereof for non-payment of rent in advance, in the amount of $1,092.00 for the month beginning October 1,2019 and ending October 10,2019. This amount does not include late charges which must be paid with rent. If an eviction is filed, there will be an additional court cost and attorney fees added of $215.00.

In default of which, the laws on eviction will be enforced.

_Ramona Ause_          10-6-19
Site Manager                                      Date

YOU HAVE THE RIGHT TO DEFEND THE ACTION IN COURT, IF ANY COURT ACTION IS BROUGHT AGAINST YOU. YOU ALSO HAVE 5 DAYS IN WHICH TO DISCUSS THE PROPOSED TERMINATION OF TENANCY WITH THE LANDLORD.

*$50.00 ADDED ON THE 6ᵀᴴ DAY AND $0 PER DAY THEREAFTER.*

*Add $215.00 court costs and attorney fees. All Miscellaneous charges are due and payable on receipt.*

EQUAL HOUSING OPPORTUNITY                    SEI.07-02

*Figure 1- Five Day Notice to Vacate from Ft. Miro*

6

The record offers no supporting testimony or evidence to support Ft. Miro's demand of $1,092 for rent, exclusive of fees, for October 2019, when in reality Gix only had a monthly rental obligation for the month of October 2019, of $332 under the Section 8 Housing program.

Contained within the Notice are repeated references confirming the purpose of the notice to elicit action from the lessee to pay the rent and late fees. It is clear that a court action had not been brought at the time notice was given, and it encouraged the lessee to "discuss" the "proposed termination" of the lease with Ft. Miro.

The notice also contains contradictory assertions regarding the $215.00 Ft. Miro seeks. The notice first provides "*If an eviction is filed, there will be an additional court costs and attorney fees added of $215.00*" and then concludes "*Add $215 court costs and attorney fees. All Miscellaneous charges are due and payable on receipt.*"

The record is devoid of evidence or testimony regarding the amount or date of receipt by Ft. Miro of the payment from the Housing Authority on behalf of Gix for September or October. There is no evidence or testimony in the record asserting the payment was not received in October as contemplated by the lease. The acceptance by Ft. Miro of that rental payment from the Housing Authority would have vitiated the eviction notice for October. Even if Ft. Miro were to assert that it expanded the pleadings to include non-payment of rent for September, the acceptance of payments from the Housing Authority in October would likely have vitiated the notice. Any judgment resulting from improper notice would be manifestly erroneous.

*Agreement of the Parties Regarding Rental Payments:*

Notwithstanding the issues resulting from a failure of effective notice as discussed above, in the absence of an agreement between a landlord and tenant, the controlling provisions of applicable lease law in Louisiana are found in Chapter 2 of Title XI of the Louisiana Code of Civil Procedure as well as Title IX of the Louisiana Civil Code. The parties may vary from these general provisions and establish a lease agreement with terms and conditions agreeable to both. The severely limited record in this matter does not contain any evidence of the terms and conditions of the lease in effect during September 2019, and only contains the first page on a lease of an undeterminable number of pages in effect for October 2019. There are no waivers of any rights or notices by Gix contained in the one page of the October 2019 lease which is contained in the record. Ft. Miro did not participate in the appeal of the judgment granting the eviction and filed no pleadings in this matter.

In the transcript of this matter, it was asserted Gix was delinquent with her September rental payment, but it is clear that Ft. Miro took no action, written or otherwise, regarding that rental payment due in September. Had it done so, the established pattern was that Gix, with payment of the $50 late fee which would have accrued on the 6th of the month, could pay the rent and late fee and remain in the property.

Ft. Miro's willingness to and policy of accepting delinquent rent is found in its lease agreement and its Five Day Notice to Vacate. Gix's reliance on her ability to pay a late fee and remain in the residence, as outlined in the lease, is well founded and buttressed by the provisions of the

Five Day Notice to Vacate, which provides the amount of rent due would simply increase by the $50 late fee. If eviction proceedings were filed, there would be an additional $215 fee assessed. Payment of fees by the lessee protected their right to remain in the leased premises. There is no testimony in the record indicating Ft. Miro ever gave notice at any time to Gix that it would not accept late payments. Late payments were contemplated, planned for, and accepted, and there is no indication Gix was ever told that late payments would not be accepted. There was never any prior notice from Ft. Miro of its intent to begin to strictly enforce the terms of the lease and deviate from the established pattern of behavior.

When Gix was served with a Ten Day Notice to Vacate in this matter in October 2019, that notice reaffirmed the tenant's right to make, and Ft. Miro's willingness to accept, payments which otherwise could be considered untimely. The record also does not detail when payments would be received from the Housing Authority, so attributing what rent was paid and when those payments were received is unclear on the record and was not considered by the trial court.

> Where a lessor customarily accepts rental payments after the date on which they are due, such "custom" by acquiescence of the parties has the effect of altering the original contract with respect to punctuality of rent payments. In such cases, the landlord's right to strict enforceability of the lease rental provisions is considered to have been waived; in order to hold the lessee to the explicit terms of the lease thereafter, the lessor must give advance notice of his intentions to enforce the lease strictly in the future.

*Hous. Auth. of Town of Lake Providence v. Allen*, 486 So. 2d 1064 (La. Ct. App. 1986); *see also Hous. Auth. of St. John v. Shepherd*, 447 So. 2d 1232 (La. App. 5 Cir.1984); *Investor Inns, Inc. v. Wallace*, 408 So. 2d 978 (La.

App. 2 Cir.1981); *Himbola Manor Apartments v. Allen*, 315 So. 2d 790 (La. App. 3 Cir.1975). Ft. Miro established a framework for acceptance of rent from tenants and the Housing Authority, and to accept those payments throughout the month with only one assessed late fee regardless of whether payment was made on the 6th day of the month or any other subsequent day.

The punctuality required of the lessee in the payment of his rent has been designed solely for the protection of the lessor, and cannot be allowed to be converted in his hands into a means of entrapping and oppressing the lessee. *Saxton v. Para Rubber Co. of Louisiana*, 166 La. 866, 118 So. 64 (1928).

Gix submitted payment in full of the rent due for September, including the $50 late fee, but Ft. Miro refused to accept that payment. Ft. Miro likewise refused later payment attempts from Gix for September and October rent simultaneously. Ft. Miro was demanding Gix pay an additional $215 fee that it collects when eviction proceedings are instituted. Ft. Miro had not instituted any proceedings to evict Gix when it demanded Gix make that payment, and had not even supplied a notice to vacate or of eviction in September. When Gix inquired of Ft. Miro about the demanded fee of $215, Ft. Miro personnel apparently objected to such an inquiry and the process of eviction of Gix and her family from the premises accelerated.

Had Ft. Miro maintained its expressed policy of accepting the rental payments and late fees, and accepted the funds tendered by Gix, the subsequent unnecessary financial obstacles and eviction of Gix could have been avoided. Gix tendered her rental payments with the applicable late fees in the manner provided for between the parties, and Ft. Miro varied from its

10

policy of accepting delinquent payments without notice to Gix and apparently singled her out for eviction when she questioned the imposition of a $215 fee for her eviction when no such action had been initiated, a prerequisite for triggering Gix's responsibility for payment of the fee.

## CONCLUSION

Considering the foregoing, the judgment of the lower court granting the eviction was manifestly erroneous and is hereby reversed. Costs of this appeal are assessed to appellee.

**REVERSED.**